[Civ. No. 20235.   First Dist., Div. Three.   Oct. 18, 1962.]

EICHLER HOMES, INC., Plaintiff and Appellant, v.
COUNTY OF MARIN, Defendant and Respondent.

Crimmins, Kent, Bradley & Burns and John L. Bradley for
Plaintiff and Appellant.

E. Warren McGuire, County Counsel, and Robert A. Small-
man, Deputy County Counsel, for Defendant and Respondent.

DEVINE, J.—The facts in this case are agreed upon between the parties. A contract for subdivision of a tract was made by plaintiff's predecessor in interest, a corporation named Old County Company. Plaintiff having been substituted to all of the rights and duties of the predecessor, the contract is referred to herein in all respects as plaintiff's, and no further reference is made to the predecessor.

The subdivision work was completed early in 1957. In February 1958, there were heavy rains, and flooding occurred in a drainage system within the subdivision. It is agreed that the drainage system for that area was inadequate, but the responsibility therefor is in dispute. The deficiency was not in the workmanship of the construction of the drainage system, but in the plans, which called for pipes which, it is agreed, were of insufficient dimensions. Plaintiff replaced the pipes with larger ones, following demand by the county, but it is conceded that this action was in no sense an admission of liability, and that plaintiff's rights were completely reserved by agreement between the parties made prior to the replacing job.

The mistake resulted from errors by an engineer, Mr. Aitken, employed by plaintiff. According to an engineer named Nolte, who was retained by plaintiff after the flooding in order to evaluate the criteria used in the Aitken drainage computations, the tributary area itself as set forth by Aitken in his plan was one third of the actual area, and the true area could have been ascertained, to exact measurement, by a field survey, which Aitken did not perform, although there were no circumstances which would have prevented such a survey. Aitken's error, in turn, resulted from his use of a faulty earlier map prepared by an architect for another corporation. There were errors also in estimates of maximum rainfall within a 25-year period (the significance of this period appears below), and in estimating coefficient of runoff, a factor which indicates how much of the water falling in the tributary area is not absorbed and must be carried off by drainage. The last two criteria are not subject to exact measurement. The actual quantity of water to be disposed of should have been postulated at six times the quantity resulting from Aitken's computations. The flooding would have resulted from his erroneous finding of the tributary area alone.

Before the subdivision work was commenced, the plans prepared by Aitken were submitted to Mr. Brigham, the county road commissioner, who made a check, but did not make a field

survey. Brigham would generally approve any drainage plan providing pipe capacity which he deemed adequate based on his evaluation of the criteria involved, although he and the subdivider's engineer might differ as to the values of the individual criteria. In like manner, Brigham would generally refuse to approve a plan providing for pipe capacity which he deemed insufficient, even though the engineer had chosen criteria values within the range indicated as aforesaid. Aitken knew that this procedure had been customarily followed in Brigham's office. It was in fact followed in this case. Brigham approved the plan.

The contract (including material in an extension agreement) provides (1) that the construction shall be done in accordance with the plans and specifications as prepared by Aitken; (2) that the work shall be done strictly in accordance with Ordinance No. 640 of the County of Marin, and in accordance with the approval of the tentative map and master plan for the area as approved by the Marin County Planning Commission; (3) that the ordinance of Marin County is incorporated into the contract; and (4) subdivider warrants that the plans and specifications are adequate to accomplish the improvement work covered by the agreement in a good workmanlike manner and in accordance with accepted construction practices, and that should the plans and specifications at any time prove to be inadequate in any respect, subdivider agrees to make such changes as are necessary to accomplish the work in a good workmanlike manner and in accordance with accepted construction practices.

Ordinance No. 640 requires the following in respect of drainage and flood control: "3.1(k) Provision shall be made for drainage and flood control in accordance with the approved improvement plan." "3.3 . . . The County Road Commissioner shall inspect the improvement plan for compliance with the provisions of this Ordinance, standard engineering practices, and any other requirements of the County. . . . Within ten days after receipt of the improvement plan the Road Commissioner shall approve or disapprove the same. Such action shall be in writing." "3.2(e) All provisions for drainage and flood control shall be established on the basis of computation of anticipated twenty-five (25) year frequency storms for maximum periods of intensity for the entire drainage basin which the subdivision serves and shall be made in accordance with the approved improvement plan. Drainage structures and ditches shall be of a size and nature to provide sufficient open areas

to carry the calculated storm water from such drainage areas as based on standard engineering principles. Where free fall of water occurs, then satisfactory means shall be provided to prevent erosion of soil. Culverts shall have concrete head walls and wing walls where conditions require. Standard drop inlet catch basins shall be constructed, in accordance with Table 2.''

The court, having made findings of fact which conform with the stipulation, concluded that plaintiff warranted that the plans and specifications were adequate to provide satisfactory drainage facilities for the subdivision, that plaintiff is statutorily obligated to improve the subdivision in accordance with standards contained in Marin County Ordinance No. 640, and that plaintiff is obliged to do the remedial work.

Appellant claims that these conclusions are wrong, and that appellant's warranty was merely to perform in a workmanlike manner the work designated in Aitken's plan, and that plaintiff's statutory liability was discharged by complying with an approved plan.

Appellant also contends that even if otherwise there would be liability, plaintiff is relieved by mutual mistake, and that there should be a partial rescission which, while allowing all the rest of the contract to remain, would relieve appellant of responsibility to construct the drains in accordance with the ordinance.

Although the questions of warranty and of obligation arising from the ordinance are discussed separately in the briefs, they are considered together in this opinion, because fundamentally appellant's position is the same, namely, that what appellant was obliged to do was no more than to construct in a workmanlike manner what was required in the approved plan, and that the ordinance, as well as the contract, required no more.

We accept the construction placed upon the contract that it requires compliance with the ordinance over and above compliance with the approved plan, and we accept the court's construction that the ordinance requires drainage structures which are in fact of a size sufficient to carry storm water (calculated at 25-year maximum intensity) from the drainage area, based on standard engineering principles.

Our reasoning is this: Where reference is made to the ordinance in paragraph one of the contract, the obligation on the contractor is to construct in accordance with Aitken's plans and specifications, but the contract goes on to say that the work is also to be done in accordance wtih Marin County

Ordinance No. 640. If the doing of the work according to Aitken's plan constituted doing it in compliance with the ordinance, there would be no need of the statement that it must also be done in accordance with the ordinance. The ordinance goes further and states that, under standard engineering practices, the capacity of a pipe designed to take water from a given inlet is to be based upon three criteria, namely, size of the tributary area, rainfall intensity over the tributary area, in the maximum amount that would probably occur once in 25 years, and coefficient of runoff. ██ It is true that the contract specifically requires the work to be done in accordance with the plan, as well as with the ordinance, but the two requirements may be construed together by regarding the contract as imposing on the subdivider the responsibility of complying with the Aitken plan, even if it were to go beyond the demands of the ordinance, and complying with it by doing in a workmanlike way what is required in the plan, but also of complying with the ordinance even if the Aitken plan falls short of the demands of the ordinance. The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (Civ. Code, § 1641; *Hoagland* v. *City of Los Angeles,* 103 Cal.App.2d 499 [229 P.2d 823].)

██ ██ Effect must be given to writings incorporated by reference (*Oberg* v. *City of Los Angeles,* 132 Cal.App.2d 151, 159 [281 P.2d 591]), and the Marin County Ordinance is expressly incorporated into the agreement of April 10, 1956.

Where the contract is ambiguous, if, as in this case, it does not appear which party caused the uncertainty to exist, it is presumed, in the case of a contract between a private party and a public body, to have been caused by the private party. (Civ. Code, § 1654; *Oberg* v. *City of Los Angeles, supra,* p. 158.)

Applying the above rules of construction, we regard the contract as incorporating a warranty that the work would be done according to the criteria set forth in the ordinance. The case thus is distinguishable from *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228 [52 P. 496], cited by appellant, wherein the contractor had done no more than agree to perform in a workmanlike manner the construction of elevators according to submitted plans and specifications, and had made no warranty as to sufficiency of the plan or design; and from *United States* v. *Spearin,* 248 U.S. 132 [39 S.Ct. 59, 63 L.Ed. 166],

in which the contractor had agreed to build a dry dock according to plans furnished by the government.

It is argued by appellant that the standards set forth in the ordinance are simply a guide for the subdivider's engineer, and that when the improvement plan is approved, the subdivider's sole duty is to comply with the plans and specifications. The ordinance does not state, however, that approval of the plan supplants the standards contained in section 3.2(e) of the ordinance, namely, drainage for storms of anticipated maximum intensity in a 25-year period for the entire drainage basin, the system to be based on standard engineering principles. These standards were not met, particularly with regard to the drainage basin, which actually was three times the size of that which was mapped.

Appellant further argues that the duty imposed upon the county road commissioner by section 3.3 of the ordinance must be made meaningful by holding that even if there is error in the plan as submitted to him, he must correct it; and if he does not, his approval of the plan determines the standards to be those contained in it. The ordinance does not say this.

The case of *Hagginwood Sanitary Dist.* v. *Downer Corp.*, 179 Cal.App.2d 756 [3 Cal.Rptr. 873], cited by appellant, is distinguishable. The rule cited in that case (at p. 760) is that "the decision of an engineer or superintendent approving or disapproving the work as performed under a contract is in the absence of fraud, bad faith or mistake conclusive and binding on the parties where the contract either expressly provides that it shall be final and conclusive or in plain language shows that it was the intention of the parties that the person to whom the question is submitted shall be the final arbiter of it," but in this case there is no such express provision nor is there plain language showing that the engineer is to be the final arbiter of the sufficiency of the plans.

The ordinance imposes certain duties of inspection on the road commissioner, and requires him to approve or disapprove the plan within 10 days after he has received it. We do not regard these provisions of the law as exonerating appellant upon the road commissioner's approval of the plan. To hold that it does so would nullify the requirements of the ordinance which, apart from its effect *ex proprio vigore,* is incorporated into the contract.

Appellant's point on mistake, and partial rescission, is without merit. As we have interpreted the contract, under the rules

of construction given above, appellant warranted an adequacy of the plans, and the very purpose of that warranty was to guard against mistakes and miscalculations contained in these plans.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.