[No. E009742. Fourth Dist., Div. Two. May 6, 1993.]

In re STEVEN A., Jr., a Person Coming Under the Juvenile Court Law.
SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
STEVEN A., Defendant and Appellant.

[No. E010699. Fourth Dist., Div. Two. May 6, 1993.]

SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
STEVEN A., Defendant and Appellant.

[No. E011343. Fourth Dist., Div. Two. May 6, 1993.]

STEVEN A., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Real Party in Interest.

**COUNSEL**

David F. Blaisdell, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

No appearance for Plaintiff and Respondent and for Real Party in Interest.

Alan K. Marks, County Counsel, and Andrew L. Kjeldgaard, Deputy County Counsel, for Respondent Superior Court.

Deborah Mohr Walker, under appointment by the Court of Appeal, for Minor.

**OPINION**

**DABNEY, Acting P. J.**—In this opinion we dispose of two related appeals and one petition for writ of mandate. The first appeal (No. E009742) presents the arguments of appellant father,[1] Steven A., concerning orders rendered on March 19 and May 8, 1991, which cut off reunification services and provided for the placement of the minor, Steven A., Jr., in a fos-adopt

---

[1] The mother is not a party to the proceedings before this court. The record does not reflect that she made any efforts to regain custody. She was "whereabouts unknown" by February of 1989, and her counsel was given leave to withdraw on the ground of no contact on February 23, 1990.

home.[2] The second appeal (No. E010699) attacks an order terminating visitation which was rendered on or about December 4, 1991, in the course of a permanency planning hearing which resulted in the issuance of an order authorizing the commencement of proceedings to free the minor from parental custody. The petition for extraordinary relief (No. E011343) challenges the authorization order itself.

We affirm the orders in the first appeal, dismiss the second appeal as moot, and grant the petition.

## STATEMENT OF FACTS

We will set out the minor's history in conjunction with the legal proceedings to some extent, but will defer a detailed recital of some of the critical procedural points to the next section.

The minor was born on August 26, 1987. On June 2, 1988, a petition was filed by the Department of Public Social Services (hereinafter the Department) under the former provisions of Welfare and Institutions Code section 300, subdivision (a), alleging that the minor had no parent capable of caring for him.[3] It was alleged that his mother had a history of drug abuse and could not be located, and that his father—appellant Steven—had recently been arrested for felony possession of a controlled substance. At a brief jurisdictional and dispositional hearing on August 5, 1988, the court approved the social worker's report, found the minor to fall under the statute, and ordered him detained with the Department.

At that time, a reunification plan was approved which, inter alia, required Steven to establish a stable home environment, demonstrate parenting skills, obtain psychiatric counseling, locate suitable housing, and to resolve his drug abuse problems.

At the semiannual review hearing (§ 366, subd. (a)) on January 25, 1989, the social worker's report indicated that the father appeared motivated and to have a positive attitude towards reunification. He visited with the minor weekly and was in regular contact with the social worker; he had also completed a drug counseling program. However, he was still living in his car, and had not obtained mental counseling or enrolled in a parenting class. The minor was continued a ward of the court, remaining in foster care, with the reunification plan continuing in effect.

---

[2]We will refer to appellant variously as "father," "appellant," and "Steven." The minor will be referred to by that term.

[3]All subsequent statutory references are to the Welfare and Institutions Code unless otherwise noted.

While the next hearing was pending, the Department released the minor to his father's care on a trial basis. Periodic checks during the next two months found the minor well cared for and "well bonded" to appellant, who was living in a small guest house. The annual hearing on October 12, 1989, resulted in maintenance of the status quo once again. At this point, prospects for Steven's eventual reunification with his son appeared bright.

However, on December 7, 1989, a subsequent petition was filed in which the Department alleged that, on December 5, Steven had been found "passed out" in his vehicle, while the minor was awake and active inside the car. Within the minor's reach was a baggie of methamphetamine. Steven had been arrested.[4]

At a hearing on May 18, 1990, it was established that Steven and the minor had been living in the car for several days due to lack of funds.[5] Steven testified that he had left the residence at which he had been staying because the owner had two large, dangerous dogs and was himself out of work. He testified that he intended to sell his car and use the proceeds to find housing. He asserted that he had been able to feed the minor regularly—the arresting officer found only stale donuts and a can of mummified cherries in the car—and explained that he had access to a toilet at a storage facility where he rented a unit. He blamed the presence of methamphetamine on a friend who had ridden in the car two days previously, and stated that he had just been sleeping when found by the police. Finally, he testified that he was now living with an ex-wife, and that he was working part-time.

The court found that appellant continued to have a long-standing drug problem, rejecting his claim that he was unaware of the presence of the methamphetamine. The minor was ordered detained by the Department, although the court indicated that appellant's current residence should be checked out as soon as possible, and that if the Department felt it appropriate, the minor could again be returned to the father before the next hearing.[6]

In the interim, appellant continued to visit regularly with the minor. However, he failed to submit to drug testing as ordered, claiming that he had to be available 24 hours a day to care for his ex-wife, who had broken her leg. In the social worker's report that contained this information, it was also noted that the ex-wife denied that appellant's services were at all essential to her well-being. At one point, in July of 1990, appellant told the social

[4]However, charges were not pursued.

[5]The father had apparently been receiving Aid to Families With Dependent Children, but was not employed. He testified that he earned up to $1,200 per month "scrapping," or recycling.

[6]However, the court noted that no one, except perhaps Steven, expected this to happen.

worker that reunification with the minor might not be feasible, and expressed interest in formally relinquishing him for adoption.

Later in July 1990, Steven was arrested on charges of molesting his 10-year-old daughter. Steven was eventually sentenced to three years in state prison after he pleaded no contest. As a result, the dispositional hearing was continued repeatedly; visitation also stopped at that time, and appellant made no effort to contact the social worker for several months.

On August 2, 1990, the court approved placement of the minor in a "fos-dopt" home; however, no such placement could be found at that time. Just prior to the commencement of the actual dispositional hearing—in fact, after it had been continued at the last moment due to the stipulation issue we address below—the Department received a second authorization to place the minor in such a home. Visits to the fos-dopt home began on March 17, 1991, with placement to be made on March 22. Father objected.

The matter finally came on for dispositional hearing on May 6, 1991. Steven admitted that he molested his daughter in an unspecified "physical" way, although he began by claiming that "she was really mad at me because I was doing drugs" thus, he inferentially denied sexual abuse. He testified that he had been unable to visit or arrange visitation while in custody, but that he had obtained a reclassification which would permit him to be transferred to a nearby facility where visits would be possible.[7] He admitted that he had continued to use drugs at least sporadically—and at some periods "more and more" up until his most recent incarceration.

Dr. Thomas Amberson, a clinical psychologist, had prepared a report and evaluation on appellant in May of 1990; as preparation, he also met with the foster mother before testifying at the May 1991 hearing. Dr. Amberson had also met with the minor and his foster mother. In his report, Dr. Amberson observed that the minor interacted very well with his father and appeared happy to see him. In his opinion, appellant was very attached to his son, and the feeling was mutual. However, due to appellant's history of drug abuse and social instability, he did not favor a return to custody at that time (i.e. in May 1990) but felt that appellant needed a substantial further amount of time to demonstrate his ability to function within social limits.

At the hearing, Dr. Amberson continued to express the opinion that contact between Steven and the minor was desirable because of the established relationship. Dr. Amberson also indicated that the foster mother, Mrs.

[7]The reclassification was apparently to the status of narcotic addict, as Steven expected to be transferred to the California Rehabilitation Center in Norco. (§ 3050 et seq.) At the time of the permanency planning hearing, however, appellant was still housed in Northern California.

Stowe, was a significant figure in the minor's life and that the maintenance of that relationship was important. However, Dr. Amberson also qualified his opinion substantially when presented with the hypothetical situation (which was in fact supported by evidence) that the minor had been placed with and adjusted well to a proposed adoptive home. He also agreed that the father was not prepared to regain custody immediately and might well never be.

The current social worker then testified that the minor appeared to have made an easy and happy adjustment in the fos-adopt home.

The trial court observed that, due to the filing of the supplemental petition in December of 1989 and some apparent subsequent confusion over the posture of the case, the matter had been pending for almost three years. It ordered that reunification services be terminated for two reasons: first, that thirty-six months had passed, and, second, because appellant was incarcerated and further services would be detrimental to the minor. (§ 361.5, subd. (e).) Visitation was found to be detrimental and was terminated. The court then set the case for a formal permanency planning hearing.

After another long delay, the permanency planning hearing began on November 22, 1991. This hearing consisted, to a large extent, of testimony which was repetitive of that previously received. Amberson's previous testimony was received by stipulation. Appellant's counsel then attempted, with no success, to elicit testimony that the minor either had shown, or probably would show, delayed symptoms stemming from the broken attachment with his father. Both the social worker and the fos-adopt parents strongly denied any current manifestation of such problems.

Once again the court declined to order further services. It found no substantial probability that the minor would be returned to his parent within six months, and that it was likely that the minor would be adopted. The county counsel was directed to institute a free-from-custody proceeding under Civil Code section 232.

### DISCUSSION

As we find most of the issues raised by Steven to be relatively routine, we will deal first with the less significant assignments of error stemming from the two appeals and the writ petition. We will then turn to the issues concerning the withdrawal of the stipulation to the temporary judge, as raised both in the first appeal and the petition for extraordinary relief.

### I.

With respect to the dispositional hearing on May 8, 1991, Steven raises three claims of error besides the stipulation issue. He asserts that the court

should have authorized a reevaluation by Dr. Amberson, that the minor should not have been placed in a fos-adopt home before the hearing, and that it was error to terminate reunification.

A.

*Denial of Reevaluation*

As we have noted above, virtually every step of the proceedings was marked by unusual delays. On May 8, 1991, when the dispositional hearing was finally held, father requested that Dr. Amberson prepare a current reevaluation. The request appears to have been made at an unreported conference; presumably it was based upon the fact that approximately a year had passed since the original evaluation. The court denied the request.

We find no error. We begin by observing that a reevaluation would have necessitated substantial additional delay, and the record suggests no reason whatsoever why such a request could not have been made earlier. We also agree with respondents that appellant has failed to show that such a reevaluation would have contributed anything material for the court's consideration.

We recognize that as a rule, the court's determinations in a dependency proceeding should include a careful consideration of present circumstances. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1221 [259 Cal.Rptr. 863].) Here, however, Steven can point to nothing significant which a new evaluation might have added. He had been incarcerated on criminal charges a few months after the evaluation, and at that time had failed to visit the minor for at least several weeks. He had had no contact with the minor since. It is patent that the bond between father and child cannot possibly have grown stronger during this protracted separation. Had there been any suggestion in the record that the minor was suffering detrimental consequences due to the absence of his father, in the sense that a reintroduction might have assuaged his anxieties, appellant's contentions might have some merit. However, there was certainly no such evidence produced at the hearing, and nothing else in the record indicates that there was any genuine need for a reexamination of the relationship.

The trial court has reasonable discretion in the appointment and selection of expert witnesses. (Evid. Code, § 730; *In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 833 [269 Cal.Rptr. 624].) Steven has failed to establish that this discretion was abused.

B.

## Placement with a Fos-adopt Family

■   Steven cites no direct authority for the argument that the order for actual placement was improper. We note that the court had approved such a placement several months earlier, with no objection recorded at that time; arguably any objection was waived.

Steven's argument is simply that the placement demonstrated the court's closed mind concerning reunification, and stacked the deck against him. We reject these contentions.

At the time of the placement, it was anticipated that the dispositional hearing would be conducted within two weeks. It is apparent that this brief period in the new home could not have disrupted whatever relationship the minor still had with his father. What appellant overlooks in his claim that this action "ruined" his chance at reunification is that his own behavior had already reduced that chance to virtually nil. He had failed to deal with his drug abuse, he was in prison for molesting his daughter, and he had not visited or spoken with the minor in almost a year.

Steven also argues that the placement created the danger of emotional damage to the minor if the adoption did not go through. This calculated risk is always taken when such a placement is made, but cannot, in retrospect, create legal error. Here, by the time of the placement, the minor had been a dependent of the court for almost three years. Father had repeatedly failed to establish a secure home or demonstrate responsibility. There was no compelling reason for respondent Department, or the court, to delay further in offering the minor the nurturing and security he needed. (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038 [234 Cal.Rptr. 739].)

C.

## Denial of Further Reunification Services[8]

■   Steven argues that under section 361.5, subdivision (e), applicable where a parent is incarcerated, services must be offered unless there is a

---

[8]In his opening brief, father concedes that the order terminating reunification services is not appealable, but reviewable only by way of extraordinary writ. (See *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 835-836 [278 Cal.Rptr. 185]; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 246-247 [271 Cal.Rptr. 629].) He asks that we treat this portion of the appeal as a petition for extraordinary relief, citing, inter alia, *Rebecca H.* We have recently held that nonappealable orders may not be reviewed by way of extraordinary writ unless the appellant has taken steps to obtain speedy review, thus complying with the legislative intent behind sections 366.25, subd. (j), and 366.26, subdivision (k). (*In re Ricky H.* (1992) 10 Cal.App.4th

finding that they would be detrimental to the minor. Such a finding was made. Steven complains that the court did not discuss on the record the "positive aspects" of possible reunification; the presumption is that such factors were deemed unpersuasive. (See *People* v. *Johnson* (1988) 205 Cal.App.3d 755, 758 [252 Cal.Rptr. 302], on the presumption that, on a silent record, the court considered and rejected factors in mitigation of sentence.) Such an opinion, on the part of the trial court, is amply supported, despite Steven's reliance on the equivocal testimony of Dr. Amberson.

In addition, well over 18 months had passed since the original finding of dependency. Mandatory services are limited to no more than 18 months. (§ 361.5, subd. (a).) A brief return to parental custody does not interrupt the running of this period. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1459 [234 Cal.Rptr. 84].) Nor is there a return to "square one" when a supplemental petition pursuant to section 387 is filed and sustained. (*Ibid.*; *In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080 [261 Cal.Rptr. 903].) As the trial court admitted, this case somehow slipped through the cracks and was, in essence, allowed to take on a new life when the supplemental petition was filed. The trial court recognized that this was error, and appellant cannot be permitted to build on this mistake to demand a new series of services.

## II.

### *The Second Appeal*

Steven's sole contention in the second appeal concerns the trial court's suspension of visitation pending the institution of a free from custody proceeding. Although our ruling on the petition for extraordinary relief moots the appeal, we briefly address the issue for the guidance of the trial court on remand.

Steven implicitly concedes that the court had no duty to order continued visitation where the plan was for adoption. (*In re Albert B.* (1989)

---

552, 562-564 [12 Cal.Rptr.2d 578].) We do not consider that appellate counsel's blithe request, in an opening brief filed nine months after the challenged order, that we construe the appeal as a writ as to any orders not appealable, qualifies for such lenient treatment. Although we recognize that there has been some inconsistency in the cases concerning which orders in these matters are appealable, counsel should at least make a good faith effort to determine the proper avenue of relief.

In this context, we commend counsel for correctly separating his challenges to the orders made at the permanency planning hearing. And, our warnings above notwithstanding, we *have* treated the appeal in No. E009742 as a writ to the extent necessary to permit us to reach all issues raised. Due to the overlapping appellate proceedings in this case, we have deemed it advisable to consolidate all the appellate challenges and to deal with all contentions.

215 Cal.App.3d 361, 385 [263 Cal.Rptr. 694].) However, he argues that the order constituted an abuse of discretion, given the past relationship between father and son and the history of successful visitation.

Steven's position is without merit. First, we register the obvious: in a real sense, it was not the court that suspended visitation, but Steven himself. At the time of the order, Steven was incarcerated in Vacaville. His own criminal activity had forced the interruption in visitation.[9]

Second, the trial court could reasonably have found that a resumption of visitation—even assuming that Steven would eventually obtain a transfer to a local facility—would be grossly detrimental to the minor. The court had determined that adoption was the best plan for the minor and had directed the Department to seek a termination of Steven's parental rights. Despite the existence of a good relationship between Steven and the minor in the past—and in the life of a four-year-old, occurrences and habits of eighteen months earlier may be ancient history—it is plain that the minor's present, satisfactory placement and adjustment would in all likelihood have been seriously unsettled by Steven's forced reintroduction. There was no error.

## III.

### The Writ Petition

Steven's writ petition raises one issue in addition to that concerning the withdrawal of the stipulation.

At the *conclusion* of the permanency planning hearing, Steven renewed his request to have Dr. Amberson reevaluate the minor, the fos-adopt parents, and his previous caretaker. Counsel explained that such a reevaluation would be necessary to enable Dr. Amberson to provide a current recommendation.

At the time the request was made, the Department had rested. As counsel for the Department observed, the proper time to make such a request had long since passed; the preparation of a new report would have required yet another substantial delay.

Furthermore, the court did not err in refusing the request for the same reasons we discussed above, in part I-A. Counsel had stipulated that Dr. Amberson's earlier report might be admitted into evidence at the permanency planning hearing. All the evidence indicated that the minor had made

---

[9]The record indicates that Steven did not contact the social worker and did not attempt to arrange visitation even while he was locally incarcerated and awaiting trial.

a successful adjustment to the new caretakers (the fos-adopt parents) and that his development was in all respects normal. Nothing suggested that the minor had suffered a psychological detriment which required, or might require, renewed contact with the father he had not seen in almost a year and a half. As we noted above, the trial court has discretion to determine whether the assistance of experts is necessary. Evidently, the trial court here did not feel the need of additional expert testimony to aid it in determining the best interests of the minor. We can find no abuse of discretion.

## IV.

### The Stipulation Issues

Although Steven raises the same arguments with respect to two efforts to withdraw the stipulation, we will employ different analyses to the two instances. In the first case, we find that the clear language of the stipulation, read in conjunction with the controlling constitutional provisions and applicable case law, bound Steven to the stipulation through the jurisdictional and dispositional hearings. In the second case, we apply contract law to find that Steven was entitled to withdraw the stipulation before the later permanency planning hearing.

### A.

On January 17, 1990, counsel for appellant stipulated that Commissioner Frank O. Tetley "shall hear the within action . . . until the final determination thereof." The stipulation also provided that Commissioner Tetley could hear "any new proceedings," but "without prejudice to either party appearing at such new proceedings and withdrawing the continuing authority contained herein."[10] At this point, the next pending hearing was the jurisdictional/dispositional hearing on the subsequent petition filed in December of 1989, after the minor had been removed from trial custody with father. On May 18, the jurisdictional hearing was held, but the dispositional hearing was not actually ready to proceed until March 15, 1991. At that time, counsel for father attempted to withdraw the stipulation, but the request was refused and Commissioner Tetley continued to preside.

California Constitution, article VI, section 21 provides that "[o]n stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." At issue at this point is the

---

[10]Copies of this stipulation and of the earlier stipulation to which we refer in footnote 14 are attached as appendices A and B.

meaning of the word "cause," and whether a new stipulation was required to authorize the temporary judge to act in the dispositional phase of the hearing.

■ The contention that "cause" is to be defined broadly to include all phases of the underlying proceedings was rejected in *Sarracino* v. *Superior Court* (1974) 13 Cal.3d 1, 9-10 [118 Cal.Rptr. 21, 529 P.2d 53], in which the court explained that "This argument erroneously attributes an overbroad meaning to the word 'cause.' A cause is the proceeding before the court . . . [¶] . . . [T]emporary judges may be appointed to hear causes connected with but distinct from the underlying principal case. [Citations.] The appointment of a temporary judge to hear a particular 'cause' carries with it the power to act until the final determination of *that proceeding*. [Citation.] Such appointment does not, however, authorize the temporary judge to act in distinct proceedings, albeit ancillary to the same principal action, without being appointed and qualified for that purpose."

In accordance with this authority, the court recognized in *Reisman* v. *Shahverdian* (1984) 153 Cal.App.3d 1074, 1096 [201 Cal.Rptr. 194], that "precedent requires us to construe the power of temporary judges narrowly." The parties have the power to define and circumscribe the authority of a temporary judge. (See *Amos* v. *Superior Court* (1960) 182 Cal.App.2d 343, 344 [6 Cal.Rptr. 252], in which the parties' stipulation expressly covered only the preliminary hearing in a criminal matter.)

Where the parties have stipulated that a temporary judge may preside over a matter, and a dispute subsequently arises concerning the scope of his powers, the courts have generally recognized a distinction between later proceedings which are "ancillary" to the hearing or trial at which the stipulation was executed, and those which are "direct progeny" of the former hearing. The power of the temporary judge extends to matters which are the "direct progeny" of earlier proceedings, but not those which are "ancillary." Thus, a temporary judge appointed to conduct a hearing may not, absent a new stipulation, hear an "ancillary" proceeding in contempt to enforce an order made at the first hearing. (*In re Wales* (1957) 153 Cal.App.2d 117, 119 [315 P.2d 433].) Such a proceeding is heard on its own record and results in a separate judgment or reviewable order (See *Nierenberg* v. *Superior Court* (1976) 59 Cal.App.3d 611, 617-618 [130 Cal.Rptr. 847].)

On the other hand, a temporary judge who renders a judgment has the power to determine a motion to vacate that judgment, which is deemed the "direct progeny" of the earlier proceeding. (*Reisman* v. *Shahverdian, supra*, 153 Cal.App.3d at p. 1096.) Still more clearly, a motion to reconsider also

falls within the authority of the temporary judge appointed to conduct the original hearing. (*McCartney* v. *Superior Court* (1990) 223 Cal.App.3d 1334, 1339 [273 Cal.Rptr. 250].) In these cases, the second hearing is, analytically, a request that the original hearing be repeated or the result reexamined, and it is logical to hold that if the parties were content to stipulate to a temporary judge for the first hearing or trial, they implicitly agreed that his power would continue until the ruling or judgment became final.[11]

None of these cases on either side of the question controls the issue before us, because dependency proceedings are to a substantial extent sui generis. There is no single "trial", but a series of separate but intimately related hearings, and it is simply not possible to describe subsequent hearings as *either* "ancillary" to earlier proceedings or as the "direct progeny" of those hearings in the sense used in *Reisman* and *McCartney*. We discuss first Steven's attempt to withdraw his stipulation before the dispositional hearing held in March 1991.

If a court sustains the allegations of jurisdiction pursuant to section 356, it must then proceed to determine the proper disposition under section 358. Although the hearings are separate, and the dispositional hearing may be long delayed, the statutes contemplate that one will promptly follow the other. Orders made at the dispositional hearing are directly related to the findings at the jurisdictional hearing. In recognition of this relationship, it has been held that an appeal from a dispositional order is sufficient to raise issues arising from the jurisdictional hearing. (*In re Kelvin M.* (1978) 77 Cal.App.3d 396, 399 [143 Cal.Rptr. 561]; see also, in the delinquency context, *In re Gregory M.* (1977) 68 Cal.App.3d 1085, 1090 [137 Cal.Rptr. 756].)

Although it is obvious that both judicial economy and common sense would mandate that the same judicial officer who heard the jurisdictional hearing also decide disposition, we concede that, strictly speaking, the temporary judge's familiarity with a case is not relevant to a determination of whether the parties in fact stipulated to his authority to hear a specific proceeding. However, with respect to the jurisdictional/dispositional hearing, the latter is a "part or continuation . . . direct progeny" of the former. (*Reisman* v. *Shahverdian, supra,* 153 Cal.App.3d 1074, 1095; *McCartney* v. *Superior Court, supra,* 223 Cal.App.3d 1334, 1339.) In this case, counsel for

---

[11]A motion to vacate a judgment or order will generally involve completely different issues from those determined at the trial or hearing, if, for example, it requires the court to evaluate the moving party's excusable neglect in suffering the adverse action. Such a hearing could well be deemed "ancillary" rather than "direct progeny," but although some courts have noted this point (e.g., *Reisman* v. *Shahverdian* at p. 1095) none have found it determinative.

Steven appeared before Commissioner Tetley without objection at least once after the jurisdictional hearing, at which time the dispositional hearing was continued. This manifested the understanding that the "cause" which Commissioner Tetley was empowered to decide encompassed both facets of the proceedings on the supplemental petition. There was no error.

### B.

Father again attempted to withdraw his stipulation before the permanency planning hearing. This hearing was distinct from the jurisdictional/dispositional hearing discussed above; it involved different factors and required the judicial officer to make a differently focused order. Like other six-month review hearings, it gave rise to a separately appealable order.[12] (§ 395; see *In re Eric B.* (1987) 189 Cal.App.3d 996, 1001 [235 Cal.Rptr. 22].)

■ However, we do not find these factors controlling here. Rather, in analyzing the stipulation in the context of the permanency planning hearing, we resort to basic principles of contract law in finding it ambiguous. As a result, we find that Steven was entitled to withdraw the stipulation before that hearing.

As quoted above, the stipulation executed on Steven's behalf on January 17, 1990, authorized Commissioner Tetley to hear not only "the within action," but also "any new proceedings" without a further stipulation. However, it also expressly empowered the parties to withdraw the stipulation "at such new proceedings."

As we acknowledged in part A of this section, there are difficulties in construing terms such as "within action" and "new proceedings" to a dependency matter. If these difficulties do not lend themselves to easy resolution by the members of this court, in our view appellant should not be held to a drastic interpretation which limits his rights beyond what we believe to be his reasonable expectations.

■ We consider the stipulation to be analogous to a contract between the litigants and the court. The litigants receive the benefit of a more speedy adjudication than could be offered if the court were compelled to assign a judge to the matter, while the court is afforded flexibility in scheduling and

---

[12]We note, however, that in this case, the so-called "jurisdictional/dispositional" hearing held in May of 1991 could have been combined with a permanency planning hearing on the original petition, although this was not done. At the time of disposition on the second petition, it will be remembered, the court promptly set the matter for a permanency planning hearing, which was not actually held for several months. The interrelationship of the proceedings here is clouded by the undue delays, but nevertheless exists as a matter of analysis.

the opportunity to make full use of all of its judicial officers, of whatever status.

Taking this view of the stipulation makes resolution of the problem relatively simple. A contract must be interpreted to give effect to the mutual intentions of the parties, but if those intentions are unclear, the law provides aids to interpretation. (Civ. Code, §§ 1636, 1637.) We apply those aids here.

The preferable approach is to interpret a contract in a manner which will give effect to all of its provisions; each clause should be viewed in light of the other terms. (Civ. Code, § 1641; *Eichler Homes, Inc.* v. *Marin County* (1962) 208 Cal.App.2d 653, 657 [25 Cal.Rptr. 394].) Furthermore, "repugnancies" should be "reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract." (Civ. Code, § 1652; *In re Marriage of Williams* (1972) 29 Cal.App.3d 368, 379 [105 Cal.Rptr. 406].) Finally, any ambiguity should be construed against the party causing it—normally, the party who was responsible for drafting the instrument. (Civ. Code, § 1654; *Howe* v. *American Baptist Homes of the West, Inc.* (1980) 112 Cal.App.3d 622, 628 [169 Cal.Rptr. 418].)

██ The stipulation executed by the parties empowers the commissioner to act in the "within action," but allows the withdrawal of the stipulation for "new proceedings." Although "within action" could conceivably refer to the entire dependency proceeding, such an interpretation tends to make the reference to "new proceedings" irrelevant. There would be no need to include the withdrawal proviso with respect to such "new proceedings" as a dependency petition filed on behalf of another child, or a new petition filed after the dismissal of original proceedings; the stipulation would clearly not apply to such distinct "new proceedings." Thus, in our view the appropriate interpretation limits "within action" to the currently pending hearing, the jurisdictional/dispositional hearing; "new proceedings" must refer to later, separate hearings which do not flow automatically out of the matter which is immediately pending.

This construction gives meaning to each clause, and resolves any apparent conflict. Insofar as it is, in this case, an interpretation unfavorable to the court,[13] the construction is suggested by Civil Code section 1654, as cited above. The stipulation forms are prepared by the court, and, we assume, are presented to the parties with no realistic opportunity for modification. In the

[13]Although it is the minor and the Department who have filed opposition to appellant on this issue, it was the trial court that rejected his effort to withdraw the stipulation, and in doing so clearly asserted its own interests.

circumstances, it is the court's duty to prepare a form stipulation which plainly and unambiguously sets forth the limits—whether narrow or expansive—of the authority the parties thereby confer. Here, the court unquestionably failed to do so, and it cannot now insist that its ambiguous document be interpreted other than favorably to appellant.[14] Nor can respondents take advantage of the defects.

Accordingly, we hold that the January 17, 1990, stipulation was irrevocable only as to the jurisdictional/dispositional hearing then scheduled. As to "new proceedings" such as the permanency planning hearing later ordered, Steven was entitled to withdraw it. The trial court erred in refusing to recognize his withdrawal.

This conclusion compels reversal of the order authorizing the commencement of proceedings pursuant to Civil Code section 232. Absent a valid stipulation, Commissioner Tetley had no jurisdiction to act at the permanency planning hearing, and his order was void. (*People* v. *Tijerina* (1969) 1 Cal.3d 41, 49 [81 Cal.Rptr. 264, 459 P.2d 680].)

The judgment in No. E009742 is affirmed. In No. E010699, the appeal is dismissed as moot. In No. E011343, the petition for writ of mandate is granted; the trial court is directed to vacate its order authorizing the institution of a free from custody action under Civil Code 232, and to conduct a new permanency planning hearing in accordance with this opinion.

Hollenhorst, J., and McDaniel, J.,* concurred.

---

[14]In this context it is appropriate to note that earlier stipulations executed by the parties were even less satisfactory. These forms authorized the named commissioner to hear the "(Jurisdictional) (Fitness) (Detention) (Disposition) (     ) Hearing on the Petition (Supplemental Petition) (Subsequent Petition) . . ." None of the four stipulations in this form was completed by striking out the irrelevant portions, or by giving the date of the subject petition. While these stipulations were apparently designed to confer authority limited to a single hearing, the failure to complete them in a manner at all relevant to a dependency proceeding leaves their scope utterly unclear.

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.

APPENDIX

**207**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO Central District

SITTING IN SEPARATE SESSION AS A JUVENILE COURT

San Pernardino County Clerk

JAN 17 1990

By _Julia A. Barrea_
Deputy

| In the Matter of | No. _____ J-110392 _____ |
|---|---|
| [STEVEN A., JR.] | STIPULATION FOR THE APPOINTMENT OF COURT COMMISSIONER AS JUDGE PRO TEMPORE (JUVENILE) |
| A Person Under the Age of 18 | |

It is understood between the undersigned attorneys and parties that this case has been assigned to **FRANK O. TETLEY** , a Superior Court Commissioner for the County of

JUDGE PRO TEMPORE
San Bernardino, and a member of the Bar of this State, and that said Commissioner's appointment as Superior Court Commissioner is in accordance with Article Six, Section Twenty-Two of the Constitution of this State and further that said Commissioner has been appointed as a Temporary Judge pursuant to an order of the Presiding Judge of this Court under the authority of Article Six, Section Twenty-One of the Constitution of this State and Section 259, Subdivision (5), of the Code of Civil Procedure of this State, and that upon such appointment said Commissioner has taken the oath of office as to all matters assigned.

It is stipulated between the undersigned attorneys and/or parties that said Commissioner shall hear the within action sitting as a Temporary Judge until the final determination thereof.

It is further stipulated that said Commissioner shall, by this signed document, be vested with the authority to hear any new proceedings in this case, whether contested or uncontested, as a Temporary Judge, without prejudice to either party appearing at such new proceedings and withdrawing the continuing authority contained herein. Notice of withdrawal shall be in writing or made orally in open Court.

Dated _____, 19____    _Vollandt - by Aldrich_
                                        Attorney for Minor

Dated _____, 19____    _Clara Redford_
                                        Attorney for Mother

Dated _____, 19____    _Robert Aldrich_
                                        Attorney for Father

Dated _____, 19____    _____
                                        DPSS Attorney for DPSS

Dated _____, 19____    _____
                                        Deputy District Attorney

APPENDIX A

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

**SITTING IN SEPARATE SESSION AS A JUVENILE COURT**

FILED - County Clerk
County, San Bernardino
JUN 2 9 1988
By _____ Deputy

16

| | |
|---|---|
| In the Matter of | No. _____ J 110392 |
| [STEVEN A., JR.] | **STIPULATION FOR THE APPOINTMENT OF COURT COMMISSIONER AS JUDGE PRO TEMPORE (JUVENILE)** |
| A Person Under the Age of 18 | |

IT IS HEREBY STIPULATED by and between the undersigned that (Jurisdictional) (Fitness) (Detention) (Disposition) ( ) Hearing on the Petition (Supplemental Petition) (Subsequent Petition) dated _____, 19_____, in the above-entitled matter may be heard by _____ FRANK O. TETLEY _____, Court Commissioner of San Bernardino County, and a member of the Bar of said State as Judge pro tempore.*

It is understood that by order of the Presiding Judge of the above Superior Court, said Commissioner has heretofore been appointed to act as a Judge pro tempore as to all matters assigned to him by a Judge of this Court for hearing by him as such Judge pro tempore and that he has taken the necessary oath of office as to all matters so assigned.

Dated _____ 19_____ _____
Attorney for Minor
VULLINET

_____
ATTORNEY FOR FATHER
ALDRICH

District Attorney
County of San Bernardino

_____
ATTORNEY FOR MOTHER
LEDFORD

By _____
Deputy District Attorney

_____
DPSS

*California Constitution, Article 6, Section 5, Article 6, Section 21;
Government Code Section 70141.7;
Code of Civil Procedure Section 259a.

| ACIS Code | 37008 |
|---|---|

82-6065A-301 Rev. 12/81

APPENDIX B