Filed 12/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of DORIT and AVI REICHENTAL. | 2d Civil No. B307255 (Super. Ct. No. 17FL00447) (Santa Barbara County) |
| DORIT REICHENTAL, Appellant, v. AVI REICHENTAL, Respondent. | |

Dorit Reichental (Wife) filed a petition for the dissolution of her 39-year marriage to Avi Reichental (Husband). The parties stipulated to the appointment of the Honorable Melinda Johnson, retired seasoned veteran in family law, as temporary judge "to hear and determine the above-entitled matter until its final determination." At Husband's request and after an eight-day evidentiary hearing, Judge Johnson entered a

"non-CLETS"[1] domestic violence restraining order (DVRO) prohibiting Wife from entering the property where Husband was residing with Jenna Jobst, his girlfriend, harassing or surveilling either of them, communicating with them, or coming within 50 yards of them.

Wife contends Judge Johnson lacked jurisdiction to enter the DVRO because it was beyond the scope of the parties' stipulation and Wife did not consent to have the DVRO request heard by her. She further contends the order must be vacated because it is a "non-CLETS" order, in violation of Family Code section 6380[2] and because it improperly extends to Jobst, who is not a party to this matter. Wife also contends Judge Johnson erred in ruling on the application because Husband did not first file it in the Superior Court.

We conclude Judge Johnson did not exceed the scope of her appointment when she heard and decided Husband's request for a DVRO, but did err as a matter of law when she specified that the restraining order was a "non-CLETS" order. We will remand the matter to permit Judge Johnson to enter an order in compliance with section 6380. In all other respects, the order is affirmed.

---

[1] "CLETS" refers to the California Law Enforcement Telecommunications System. Domestic violence restraining orders (DVROs) are reported to law enforcement through this system. (Fam. Code, § 6380, subd. (a).)

[2] All further statutory references are to the Family Code, unless otherwise stated.

FACTS AND PROCEDURAL HISTORY[3]

Wife filed the petition for dissolution of marriage in February 2017.  In May 2017, the parties agreed to the appointment of Judge Johnson.  The stipulation provides, "The temporary judge shall hear and try the above- entitled matter, including hearing and determining all pretrial motions, discovery matters, and orders to show cause; presiding over the trial; rendering judgment; and hearing and determining all post-trial motions and orders to show cause."

Husband filed a request for a DVRO.  His supporting declaration described receiving "numerous harassing and threatening emails from [Wife] that have frightened me and caused me to be concerned about her mental stability."  Husband noted that, after their separation, Wife bought a home that was near their former residence, where he was living with Jobst.  He believed that Wife was watching him and Jobst from a neighbor's property and that she gained access to his gated property through that neighbor's yard.  Husband claimed Wife had filed a false police report accusing him and Jobst of disabling the security system and installing listening devices in her home.  He also described an incident in which a package addressed to Wife was delivered to his house.  The package contained a book titled, "Women Who Love Psychopaths: Inside the Relationships of Inevitable Harm with Psychopaths, Sociopaths, & Narcissists."  Husband declared that Wife had "repeatedly accused me of being a sociopath and narcissist," and that she repeatedly left a copy of the book on his bedside table while they were still living together.

---

[3] Wife does not challenge the evidentiary basis for the restraining order.  As a consequence, we offer an abridged statement of the facts on which the DVRO request is based.

The final incident Husband described involved Wife and two other people standing in his driveway, looking through the wrought-iron gate in the direction of his house.

Jobst provided a declaration in which she described two interactions with Wife. First, she described Wife following her in an aggressively unsafe manner as Jobst drove Husband's Bentley on the northbound 101 Freeway, down the Conejo grade. Second, on four occasions in one week, Jobst saw Wife parked in a bus stop near Husband's house. From this vantage point, Wife could "monitor each person who enters or leaves our street."

Wife's opposition argued Husband's claims were not a sufficient basis for a restraining order. She denied that her emails were abusive, threatening or harassing, and contended that filing the police report was a constitutionally protected activity. Wife further asserted that Husband's residence was community property and that there was no "exclusive use" order in place. Consequently, it was not improper for her to walk onto the property, knock on the front door of the house or look at the house through the gate. Wife provided similar, purportedly innocent, explanations for the other conduct described in Husband's declaration.

In addition to her written opposition to the DVRO request and her declaration, Wife filed written objections to Husband's evidence and requested that Judge Johnson rule on those objections.

After a two-hour hearing, Judge Johnson denied the request for "temporary emergency orders" without prejudice and directed the parties "to obtain the first available date for an evidentiary hearing on the petition." The parties selected dates for the evidentiary hearing and then engaged in discovery,

4

including producing documents and deposing Husband, Jobst and Wife.

On the first day of the evidentiary hearing, Wife objected to Judge Johnson presiding over Husband's DVRO request. She contended the DVRO request should be dismissed because the proceeding was outside the scope of the stipulation appointing the temporary judge. She described the DVRO request as an ancillary proceeding that was independent from the dissolution action referred to Judge Johnson. Wife noted the DVRO request was based on facts that arose after the petition for dissolution was filed and included a request that the order extend to Jobst, who is not a party to the dissolution action.

Judge Johnson declined to dismiss the DVRO proceeding, concluding that it was related to the petition for dissolution and fell within the scope of the parties' stipulation. Judge Johnson acknowledged that the DVRO request relied on circumstances arising after the dissolution petition was filed but noted, "[T]here are a lot [of] things that we try that weren't contemplated at all at the time the petition[] or response was filed. That is typical in family law, particularly the ones that linger on for some period of time."

Over the next eight days, Judge Johnson heard in exacting detail the content of emails and text messages Husband considered abusive or threatening, and the instances in which he believed Wife spied on him or entered the property where he was living. Wife provided explanations for her language and behavior. She attempted to impeach Husband's testimony that he felt harassed or threatened with evidence that, for example, he sometimes initiated communication with her, visited her house,

5

offered to set up weekly breakfasts or lunches with her, and stayed at the same hotel when they traveled to family events.

Judge Johnson granted a "non-CLETS" restraining order accompanied by a statement of decision. She concluded many of Wife's communications to Husband were "disturbing, annoying and often extremely insulting and profane." While these communications were "unwelcome and intrusive," they were not, in the Judge Johnson's view, "enjoinable." However, Wife engaged in other conduct that was a proper basis for a restraining order. Wife copied some of her inappropriate communications to third parties, including the couple's therapist and their grown children. She exploited Husband's childhood traumas and threatened to destroy his reputation by revealing negative information about him if he did not do what she wanted.

Judge Johnson credited Jobst's testimony about Wife chasing her on the freeway. She found this conduct, "is evidence of [Wife's] volatility and of the very real possibility of her acting on her threats." In addition to expressing concerns about Wife's credibility, Judge Johnson noted that Wife had never acknowledged her behavior was inappropriate, raising the concern it would be repeated. She concluded Wife had destroyed Husband's sense of mental and emotional calm by threatening to use the "highly sensitive information" she possessed to "expose" Husband and damage his reputation "if he did not behave as she wished in the context of the divorce litigation."

Judge Johnson acknowledged that direct communication between the parties had "largely ended," and that Wife had not engaged in "similarly abusive and harassing behavior" since the dissolution petition was filed. However, the litigation was ongoing and complex financial issues remained to

6

be decided.  "The situation remains volatile and [Wife's] total failure to comprehend the seriousness of her behavior raises concerns it could be repeated as the litigation proceeds."

In addition, Judge Johnson acknowledged that a CLETS order would have "the potential of disrupting [Wife's] employment as a life coach and, perhaps, eventually, a therapist, to an unwarranted degree."  She concluded a non-CLETS order, "[a]lthough disfavored in the law," was appropriate.  The judge explained, "just as the pattern of the behavior is such as to leave the Court in a state of mind to believe re-offen[d] is more than a hypothetical possibility, the length of time since the last reported incident suggests something less than the full force of law may be sufficient to prevent such a re-offense."

The resulting "non-CLETS" order provided: (1) Husband has exclusive use of the former marital residence and Wife is prohibited from entering the premises, including the driveway, except by invitation; (2) Wife shall not "harass, attack, strike, threaten, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance or block the movements of" Husband or Jobst "as a household member;" (3) Wife shall stay 50 yards away from Husband, Jobst and their vehicles; (4) Wife shall not communicate with Husband or Jobst, "except in the case of a true emergency."  The order further specified, "Nothing in this order is intended to prevent [Wife] from driving the most direct route to her residence . . . , even if it entails driving closer than 50 yards" from Husband's residence.

7

DISCUSSION

*Jurisdiction*

Wife contends the DVRO proceeding is ancillary to and independent of the dissolution action that she consented to have decided by a temporary judge. As a consequence, she contends, the temporary judge lacked jurisdiction to enter the "non-CLETS" restraining order.

"""The appointment of a temporary judge to hear a particular 'cause' carries with it the power to act until the final determination of *that proceeding.* [Citation.] . . .""" (*Gridley v. Gridley* (2008) 166 Cal.App.4th 1562, 1581, quoting *In re Steven A.* (1993) 15 Cal.App.4th 754, 768.) In determining whether a temporary judge is authorized to resolve a particular matter, "courts apply the rule that '[t]he determination of a cause encompasses subsequent proceedings that are its "direct progeny," but not those considered "ancillary" to the stipulated cause. [Citation.] Direct progeny are those which are a continuation of the stipulated cause or question its finality, such as motions to vacate or reconsider. [Citations.] An ancillary proceeding, on the other hand, is heard on a separate record and seeks an independent judgment or reviewable order. . . .'" (*Gridley, supra,* at pp. 1582-1583.)

Wife argues the parties' stipulation appointing Judge Johnson defined the "cause" assigned to her as the dissolution of the parties' marriage. The DVRO proceeding is ancillary to that "cause," she contends, because it is a separate cause of action that proceeds on its own record and whose outcome does not impact any final judgment in the dissolution action. We disagree.

The parties stipulated that Judge Johnson was authorized to "hear and try the above-entitled matter," e.g., the

8

petition for the dissolution of the parties' marriage, "including hearing and determining all pretrial motions . . . ." In the family law context, a request for order is the equivalent of a motion. (Cal. Rules of Court, rule 5.92(a)(1)(A).) The Family Code also expressly authorizes the court to issue a DVRO "in a proceeding for dissolution of marriage . . . ." (§ 6221, subd. (a).) We conclude a request for a domestic violence restraining order, filed in a pending dissolution case, is a motion in that case. (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 37.) Phrased otherwise, a DVRO can, as this case shows, arise out of, and may be the offspring of, or "direct progeny" of, a marital dissolution action. (*Gridley, supra,* 166 Cal.App. 4th at pp. 1582-1583.) Accordingly, the parties' stipulation authorizing Judge Johnson to hear and determine pretrial motions applies to Husband's request for a DVRO.

Wife protests that a DVRO request is an ancillary proceeding and not a motion because the request can be made by filing a form petition, without also seeking a dissolution or separation. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 335; § 6221, subd. (a) [DVRO may be issued "in a proceeding brought pursuant to this division," in an action under the Uniform Parentage Act, or in a dissolution proceeding].) The DVRO request has a separate record and resolution of the request need not impact the judgment in the dissolution action. But the fact that a DVRO may be obtained in a separate proceeding does not mean that it must be a separate proceeding. As we have noted, a DVRO may also be obtained in a dissolution proceeding, as it was here. A DVRO may be included in a judgment of dissolution and may impact other provisions of the judgment, such as the division of property and child custody.

9

Here, the parties agreed the Judge Johnson would "hear and try the above-entitled matter until its final determination." Husband's DVRO request arose during the pendency of the dissolution and relates to incidents that occurred while the matter was pending. There has been no "final determination." We conclude the DVRO request is part of the "above-entitled matter," was therefore within the scope of the temporary judge's appointment.

*Family Code § 6380*

Family Code section 6300 grants the court discretion to enter a DVRO to "prevent acts of domestic violence [or] abuse . . ." when the person seeking the order "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§§ 6220, 6300, subd. (a).) Abuse in this context includes physical abuse or injury and acts that "destroy[] the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.)

Section 6380 provides, "Upon the issuance of a protective order to which this division applies . . . the Department of Justice shall immediately be notified of the contents of the order . . . ." (*Id.*, subd. (b).) This process enters the order into CLETS, which permits it to be enforced by law enforcement officers. Section 6380 describes the process of reporting a DVRO and entering its contents in CLETS in mandatory, not discretionary terms.

Wife contends Judge Johnson abused her discretion by specifying that the restraining order was based on a finding of domestic abuse but was a "non-CLETS" order that would not be reported to the Department of Justice. The "non-CLETS" aspect of the order was an error of law. Judge Johnson found that Wife

10

committed acts of abuse within the meaning of the statute. Section 6380 required the resulting restraining order to be reported to the Department of Justice and entered in CLETS. (§§ 6221, 6380.) The obligation to register the order in CLETS was mandatory, not discretionary.

Wife contends the remedy for this error is to vacate the order in its entirety. She is incorrect. Judge Johnson found Wife had engaged in abuse within the meaning of section 6320 and properly granted Husband's DVRO request. (§ 6300; see, e.g., *In re Marriage of Nadkarni, supra,* 173 Cal.App.4th at p. 1497.) The appropriate remedy is to remand the matter, to permit Judge Johnson to enter an order that complies with the mandatory provisions of section 6380.

*Scope of Order*

Wife contends Judge Johnson erred because the DVRO included Husband's girlfriend, Jobst, as a protected person, even though Jobst is not a party to the dissolution. She is incorrect. Section 6320 grants the court discretion to "issue an ex parte order enjoining a party from . . . disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (*Id.*, subd. (a).) Section 6340 grants the trial court discretion to issue "any of the orders described in Article 1 (commencing with Section 6320) after notice and a hearing." (*Id.*, subd. (a).)

Jobst is a member of Husband's household because she lives with him. Judge Johnson found good cause to include Jobst in the protective order based on Wife's conduct in chasing Jobst on the freeway, falsely accusing Jobst and Husband of disabling her home security system and surveilling Husband and Jobst from the neighbor's property. Including Jobst in the

11

restraining order was not an abuse of discretion. (*In re Marriage of Nadkarni, supra,* 173 Cal.App.4th at p. 1495 [decision to grant DVRO """"rests in the sound discretion of the trial court . . . """"].)

For similar reasons, we conclude Judge Johnson did not err when she permitted Jobst to testify. The testimony regarding Wife's conduct toward Jobst was admissible because Jobst was entitled to protection as a member of Husband's household. (§ 6320.) Additionally, Jobst witnessed acts of abuse committed against Husband. Her testimony was relevant to establish that those acts occurred. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 522 [testimony of third party witness to act of elder abuse properly admitted].)

*Rule 2.400*

California Rules of Court, rule 2.400 (rule 2.400) provides, "All original documents in a case pending before a temporary judge or referee shall be filed with the clerk in the same manner as would be required if the case were being heard by a judge, including filing within any time limits specified by law and paying any required fees." (Rule 2.400, subd. (b)(1).) Here, Husband initially filed his request for a DVRO with Judge Johnson and only later with the clerk of the superior court. Wife contends the initial failure to file with the court clerk deprived Judge Johnson of jurisdiction to consider the DVRO request.

"Rule 2.400 is intended to ensure open access to records in any proceedings before temporary judges and referees." (*In re Conservatorship of Townsend* (2014) 231 Cal.App.4th 691, 705.) The filing requirement ensures "'that the court clerk's office has the complete case file and can make all nonconfidential portions of the file available to the public . . . .'" (*Ibid.*)

12

*Townsend* held that a motion to vacate a judgment did not extend the moving party's time to file a notice of appeal because the motion was filed with a temporary judge and not with the clerk of the superior court. (*In re Conservatorship of Townsend, supra,* 231 Cal.App.4th at pp. 705-706.) "While there may be circumstances in which the failure to file documents with the superior court clerk as required under rule 2.400(b) may be waived, a motion to vacate is not one of the circumstances. . . . A motion to vacate is part of the calculation to determine the jurisdictional time limits to file an appeal. To extend the time to appeal, the procedural requirements in [Code of Civil Procedure] section 663a must be met. We have no authority to rewrite the statute to create exceptions in section 663a, subdivision (a) in proceedings before a temporary judge where the parties submit the motion to vacate to the temporary judge but do not file it with the clerk." (*Ibid.*)

Here, Husband filed his DVRO request with Judge Johnson before filing it with the superior court clerk. The document was, however, filed with the superior court clerk before the evidentiary hearing concluded and before Judge Johnson entered the order. Unlike a motion to vacate or a notice of appeal, there is no jurisdictional time period within which a DVRO request must be filed. Under these circumstances, as Husband points out, any error is harmless.

*Attorney Fees*

Wife contends she was the prevailing party on the DVRO request because Judge Johnson denied Husband's request for a CLETS order. Wife had contended the DVRO request should be denied in its entirety. Instead, the DVRO request was granted, even though Judge Johnson entered a "non-CLETS"

13

order.  Husband obtained the restraining order he sought.  He should have been awarded the CLETS order he sought.

*Disposition*

The matter is remanded to Judge Johnson with instructions to enter a modified order that complies with Family Code section 6380.  In all other respects, the order is affirmed. Husband shall recover his costs on appeal.

CERTIFIED FOR PUBLICATION.


YEGAN, Acting P. J.


We concur:


PERREN, J.


TANGEMAN, J.

14

Melinda A. Johnson, Temporary Judge[*]

Superior Court County of Santa Barbara

_____

M. Jude Egan, for Appellant.

Phillips Jessner, Gregory W. Jessner, Adam N. King and Raymond K. Martinez, for Respondent.

[*] Superior Court of Santa Barbara, Melinda A. Johnson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.)