[No. A095476. First Dist., Div. Four. July 26, 2002.]

THELMA WALKER, Plaintiff and Respondent, v.
SAN FRANCISCO HOUSING AUTHORITY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A. through II.C. and II.E.

COUNSEL

Erickson, Beasley, Hewitt & Wilson, Edwin J. Wilson, Jr., Henry Hewitt; Grillo & Stevens, Evelio M. Grillo and James T. Diamond, Jr., for Defendant and Appellant.

Law Offices of Michael S. Sorgen, Michael S. Sorgen, Amy R. Levine and Andrea Adam Brott for Plaintiff and Respondent.

OPINION

REARDON, J.—In the face of flagrant discovery abuse, the trial court ordered terminating sanctions against appellant San Francisco Housing Authority (SFHA). After entry of default judgment against it, SFHA submitted an affidavit of attorney fault, moving unsuccessfully to set aside the default judgment pursuant to Code of Civil Procedure[1] section 473, subdivision (b) (section 473(b)). On appeal, SFHA assails both the order for terminating sanctions and the denial of its motion to set aside the default judgment. We affirm.

## I. FACTUAL BACKGROUND

### A. The Underlying Lawsuit

In September 1998 respondent Thelma Walker filed a complaint against SFHA and Joe Trigueros, a former employee of SFHA. The complaint set forth causes of action for sexual harassment and sex discrimination; defamation; invasion of privacy; interference with prospective economic advantage; negligent hiring, retention and supervision; assault; and trespass to property.

Walker alleged that while employed by SFHA as a journeyman painter, she suffered "severe and/or pervasive" sexual harassment by her foreman, Joe Trigueros. SFHA eventually put Trigueros on administrative leave, but brought him back before concluding its investigation; several months later he was laid off. Meanwhile, SFHA employees retaliated against Walker. She sought a transfer to another department. Management agreed to the accommodation, reneged, gave her an unacceptable assignment, then assigned Walker to another site where her new supervisor warned other workers to "watch out" for her because she had complained.

---

[1]All statutory references are to the Code of Civil Procedure.

## B. *Discovery*

### 1. *Prior to March 2000 Hearing on Motion to Compel*

Walker brought her first motion for sanctions against SFHA for discovery abuse in March 1999. The court awarded $2,500 in sanctions against SFHA and Dennis Caines, the attorney with SFHA's Office of the General Counsel with primary responsibility for the case.

Walker brought a second motion for sanctions in May 1999, along with a motion to compel production of documents. Caines signed a stipulation agreeing to produce everything Walker sought. Toward the end of the year, the parties attempted to meet and confer regarding deficiencies in SFHA's responses to her discovery requests.

Not making headway, on January 20, 2000,[2] Walker moved again to compel discovery, with a third request for sanctions.

### 2. *Ruling on Motion to Compel*

Following an extensive hearing before Commissioner Loretta M. Norris, the court ordered that SFHA comply with 31 of Walker's discovery requests within three weeks. Among other things, the court called for (1) "clear, straightforward" declarations on significant enumerated points concerning SFHA's investigation and actions it took as a result of Trigueros's conduct toward Walker; (2) sworn statements that no additional documents existed relating to Walker's return to work, reasons for her assignment, and proposed layoffs of other painters; (3) a response to the special interrogatory requiring SFHA to state all facts supporting its contention that Walker was not sexually harassed by Trigueros; (4) production of documents including complaints of sexual harassment within various departments, Walker's time sheets and layoff forms regarding other employees; and (5) production of certain documents previously ordered produced.

Shortly after the hearing Caines resigned. SFHA General Counsel Carl Williams assigned the case to Assistant General Counsel Phillip Matsumoto.

## C. *Tentative Settlement Agreement*

The parties commenced mediation in March, reaching a tentative settlement on March 31. Per the settlement Walker was to be paid $365,000 in

---

[2]Unless otherwise indicated, all further references to dates are in the 2000 calendar year.

satisfaction of all claims including attorney fees. The settlement was subject to approval by the SFHA Commission (Commission), with a specific provision that settlement would be recommended by General Counsel Williams. As well, SFHA promised to use its best efforts to assure payment within 90 days of execution of the agreement.

Williams, an officer and one of three key administrators for SFHA, signed the agreement for SFHA.

By stipulation and court order, discovery was suspended with reservation of rights until such time as Walker indicated her intent to proceed with litigation.

On June 1, Matsumoto advised Amy Levine, counsel for Walker with Michael Sorgen's firm, that the Commission had met in closed session in May but could not unanimously approve the agreement. He further indicated that the Commission would consider the settlement agreement again at its June 8 meeting. Following that meeting, Matsumoto told Levine that the Commission had questions and was leaning toward approval.

On July 12 Levine wrote to Williams and Matsumoto that litigation would resume if the Commission did not approve the settlement by July 27. Also that month, Michael Sorgen contacted Williams. Williams reported that the settlement had not yet been approved, and staff had been instructed to investigate some issues. He promised to provide Sorgen with upcoming agendas and minutes of the Commission. Williams did not keep this promise.

Thereafter, Sorgen informed Williams that the firm would press on with litigation unless the Commission ratified the agreement at the August 24 meeting. Williams said he did not have authority to resubmit the settlement at the August meeting but would present it to the Commission in September.[3] Later he added that the reasons for not calendaring settlement for the August meeting concerned "privileges of attorney-client and work product."

As it turned out, the Commission rejected the tentative settlement for budgetary reasons on the two occasions Williams presented it.

D. *Litigation Resumes*

On August 29 Sorgen notified SFHA that it was resuming litigation and he expected SFHA to comply with the March discovery order by September 14.

---

[3]In fact, Williams had a scheduled trip to China in September.

Williams promised compliance, but SFHA failed to honor the deadline. In October, Walker moved for issue and evidentiary sanctions, or alternatively a terminating sanction, for abuse of the discovery process.

SFHA eventually served discovery responses on November 13. They were inadequate and unverified. Williams signed, explaining that Matsumoto was out of the office and the compliance date was imminent. But Matsumoto had signed his own declaration "in support of compliance with discovery order" *on November 13.*

The sanctions motion was continued several times, once due to Matsumoto's suggestion that no opposition had been filed due to a problem with service. SFHA ultimately filed opposition on December 6. Therein, Matsumoto blamed SFHA's noncompliance on the agency's takeover by the Department of Housing and Urban Development in 1996.

Following the hearing Commissioner Norris granted Walker's motion for a terminating sanction, ordered SFHA's answer stricken and awarded $30,000 in monetary sanctions for discovery abuse.

### E. *Prove-up Hearing*

SFHA objected to the prove-up hearing. The agency argued that default judgment could not be entered against the employer on a theory of respondeat superior while claims were pending against the employee (codefendant Trigueros). Commissioner Norris ruled that SFHA had no standing to appear or present evidence and accordingly did not consider its objections.

Walker sought, and was awarded, a total recovery of $1,611,979.60.

### F. *Motion to Set Aside*

SFHA moved to set aside the default and default judgment pursuant to section 473(b),[4] noticing the motion for hearing in the law and motion department. In the tentative ruling Judge Alex Saldamando ordered the

---

[4]This statute provides in part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment . . . taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any . . . (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).)

motion off calendar, directing SFHA to renotice the motion before Commissioner Norris. At the hearing Judge Saldamando refused to hear SFHA's jurisdictional objection to Commissioner Norris.

SFHA petitioned this court for extraordinary relief; we summarily denied the petition. (*San Francisco Housing Authority v. Superior Court* (May 18, 2001, A094993).)

At the hearing before Commissioner Norris on the motion to set aside, SFHA again raised the jurisdictional issue. Commissioner Norris indicated that "[t]his is an ongoing proceeding, not a new matter." The court denied SFHA's motion. In addition to Matsumoto's negligence, it found "ample evidence" of negligence on Williams's part, as the representative of SFHA.

## II. DISCUSSION

A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *Jurisdiction to Rule on Section 473 Motion*

 Turning to the section 473 proceeding, SFHA first challenges Commissioner Norris's jurisdiction to rule on the motion. There was no lack of jurisdiction.

Our Constitution provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.) Under the Superior Court of San Francisco County, Local Rules,[7] "[a] party is deemed to stipulate that all matters heard in the Discovery Department may be heard and disposed of by a Commissioner, acting as a temporary judge, by failing to file an objection in writing within thirty (30) days after the first pleading is filed in the action by that party . . . ." (Rule 8.14(D).) SFHA answered Walker's complaint and did not file an objection. Therefore, it is deemed to have stipulated to Commissioner Norris's jurisdiction to hear the various discovery matters in this case.

Further, under the rules, "[d]iscovery matters . . . are presided over by commissioners sitting as temporary judges or by any other judicial officer

---

*See footnote, *ante*, page 685.

[7]Unless otherwise indicated, all references to rules are to the local rules of the San Francisco County Superior Court.

assigned by the Presiding Judge." (Rule 8.14(A)(1).) "Discovery matters" include "all matters arising under or related to the Civil Discovery Act (Code of Civil Procedure, sec. 2016 et seq.) except civil contempt by a nonparty." (Rule 8.14(A)(1)(a).)

SFHA maintains that a motion to aside the judgment is not a discovery matter under the local rules, and thus the default provisions of rule 8.14(D) do not come into play. Not so. This motion to set aside arose out of the sanctions motion and thus was within the scope of matters "arising under or related to" the Civil Discovery Act. Commissioner Norris had jurisdiction to impose discovery sanctions and thus had jurisdiction to address any motions that directly challenged that order.

SFHA also urges that it should have been permitted to refuse to stipulate to Commissioner Norris's jurisdiction at the section 473 hearing, after she prevented the agency from entering an appearance at the prove-up hearing. The contention lacks merit.

The original stipulation at the commencement of discovery proceedings set the stage for everything to come; no further stipulation was necessary. Appointment of a temporary judge to hear a particular cause carries with it the power to act until final determination of that proceeding. (*McCartney v. Superior Court* (1990) 223 Cal.App.3d 1334, 1338 [273 Cal.Rptr. 250].) The power of a temporary judge to determine any given subsequent proceeding hinges on whether that proceeding is ancillary to, or a direct progeny of, the stipulated cause. Ancillary proceedings are heard and determined on a separate record independent of the ruling in the stipulated cause and thus are not a continuation of that cause. On the other hand, proceedings which question the finality of the temporary judge's ruling or are a part of the stipulated cause are its direct progeny. (*Id.* at pp. 1338-1339; *Reisman v. Shahverdian* (1984) 153 Cal.App.3d 1074, 1095-1096 [201 Cal.Rptr. 194] (*Reisman*).) Such direct progeny include subsequent motions for new trial, to vacate due to mistake, inadvertence, or excusable neglect, or to reconsider the ruling. (*McCartney v. Superior Court, supra,* 223 Cal.App.3d at p. 1339; see also *In re Steven A.* (1993) 15 Cal.App.4th 754, 768 [19 Cal.Rptr.2d 576].) Moreover, the fact that a section 473 motion might raise a "somewhat different" question from the one considered in the previous hearing does not render it ancillary. Such a motion is a direct continuation of the earlier proceeding, seeks no separate judgment and in fact constitutes a

direct attack on the earlier judgment. (*Reisman, supra,* 153 Cal.App.3d at pp. 1095-1096.)[8]

Finally, under the rules, motions to set aside are to be heard "by the judge who presided at the . . . proceedings unless that judge is not available." (Rule 8.1(B)(5).) This rule is in keeping with sound judicial policy requiring that section 473 motions be heard by the same judge who rendered the challenged judgment. (*Reisman, supra,* 153 Cal.App.3d at p. 1096, fn. 5.)

SFHA argues nonetheless that *Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506 [76 Cal.Rptr.2d 322] compels a different result. *Jovine* is inapposite. It pertains to the power of the trial court to make general and special references under sections 638 and 639. Nor does *Reisman* aid appellant. There, the reviewing court determined that the commissioner lacked jurisdiction to hear the section 473 motion because defendant had never been a party litigant until filing that motion and had never stipulated to the commissioner's jurisdiction to do anything. (*Reisman, supra,* 153 Cal.App.3d at pp. 1096-1097.) There is no question here about SFHA's status as a party.

E. *Trial Court Properly Denied the Motion to Set Aside**

. . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The default judgment and the order denying SFHA's motion to set aside the default judgment are affirmed.

Kay, P. J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 13, 2002.

---

[8]SFHA relies on *In re Steven A.* for the proposition that a motion to vacate could be deemed ancillary because it requires the court to evaluate the moving party's excusable neglect. (*In re Steven A., supra,* 15 Cal.App.4th at p. 769, fn. 11.) Although *In re Steven A.* cites *Reisman* for this proposition, as noted above *Reisman* reached the correct, and opposite, result.

*See footnote, *ante,* page 685.