Filed 4/23/14  Poulson v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RONALD POULSON et al., | |
| Plaintiffs and Appellants, | E056220 |
| v. | (Super.Ct.No. RIC1201008) |
| BANK OF AMERICA et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge and Paulette Durand-Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed in part; reversed in part with directions.

Ronald Poulson and Dulcisima Poulson, in pro. per., for Plaintiffs and Appellants.

Bryan Cave, Christopher L. Dueringer and R. Andrew Chereck for Defendants and Respondents Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., and EMC Mortgage LLC.

Barrett Daffin Frappier Treder & Weiss, Edward A. Treder and Thomas K. Agawa for Defendant and Respondent NDeX West, LLC.

Ronald Poulson and Dulcisima Poulson (collectively "the Poulsons") sued Bank of America, N.A. (Bank of America); Mortgage Electronic Registration Systems, Inc. (MERS); EMC Mortgage LLC (EMC); and NDeX West, LLC (NDeX)[1] (collectively "defendants") for (1) wrongful foreclosure, (2) intentional fraud, and (3) breach of contract. The trial court, specifically Judge Daniel A. Ottolia, sustained defendants' demurrer without leave to amend. Approximately two months later, the trial court, specifically, Commissioner Paulette Durand Barkley, as a result of the demurrer being sustained, entered a judgment of dismissal against the Poulsons, ordering the Poulsons take nothing against any of the defendants and awarding defendants their costs.

The Poulsons contend (1) the trial court erred by sustaining the demurrer, and (2) the dismissal was erroneous because the Poulsons did not stipulate to a commissioner presiding over their case. We reverse the dismissal with directions, but otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.     COMPLAINT

The facts in this subsection are taken from the Poulsons' complaint. The property at issue is a single family residence in San Jacinto (the property). In December 2006, the Poulsons purchased the property with a mortgage in the sum of $304,000.

---

[1] NDeX is an agent for MERS.

2

MERS was listed as a beneficiary on the mortgage. After the sale closed, EMC Mortgage Corp.[2] relinquished its interest in the loan. Without the Poulsons' knowledge, their mortgage was securitized and transferred. NDeX filed a notice of default and election to sell against the property. A trustee's sale was held on September 4, 2010, and the property was transferred to Bank of America.

The Poulsons mix a variety of issues into the facts, such as: (1) the crucial terms of the mortgage were not explained to the Poulsons; (2) the mortgage documents were not provided in Dulcisima Poulson's native language of Tagalog; (3) the loan was fully paid off when it was securitized, i.e., the people who purchased the loan paid the loan in full; and (4) MERS cannot transfer an interest in property since it does not hold an interest in the property.

The first cause of action was for wrongful foreclosure against all defendants. The Poulsons alleged Bank of America did not possess the mortgage note and therefore could not demand payment from the Poulsons, and ergo could not foreclose on the property. Also within the first cause of action, the Poulsons alleged defendants breached a contract by (1) refusing to accept payment, (2) improperly processing payments, and (3) performing improper accounting. The Poulsons further asserted the foregoing three contract problems caused defendants to make inaccurate reports to third parties, which we infer are credit reporting agencies. The Poulsons also faulted

---

[2] The party on appeal is EMC Mortgage LLC, as opposed to EMC Mortgage Corp.

defendants for disclosing personal and confidential financial information to third parties.

The second cause of action was for intentional fraud against all defendants. The Poulsons alleged NDeX recorded a fraudulent notice of default and fraudulent notice of trustee's sale because "[d]efendants had no standing to file said documents" and "were [n]ot [t]he [h]older [i]n [d]ue [c]ourse." Thus, the Poulsons asserted defendants fraudulently represented they had the authority to foreclose upon the property, when they did not have such authority.

The third cause of action was for breach of contract. The Poulsons alleged defendants were obligated to place the "property back into the [Bear Sterns] trust." The Poulsons alleged defendants' failure to move the property into the trust was a breach of contract. The Poulsons further alleged defendants were not the "[h]older [i]n [d]ue [c]ourse" and therefore the contract was void, and faulted defendants for not giving the Poulsons "genuine authentic documents," e.g., the original loan documents. The Poulsons asserted defendants failed to comply with provisions of the Uniform Commercial Code when securitizing the mortgage. Also within the breach of contract cause of action, the Poulsons asserted defendants committed fraud and therefore the Poulsons were "entitled to punitive damages three times the amount of said property."

In the "Prayer for Relief" section, the Poulsons requested: (1) a declaration that defendants did not have the authority to foreclose upon the property, due to the securitization of the loan; (2) a declaration that the mortgage contract was void; (3) an order requiring defendants to return (a) the original loan documents, (b) all the money

4

the Poulsons paid toward their mortgage, and (c) all the money and interest accrued as part of the securitization of the mortgage; (4) an order requiring defendants to give clear title of the property to the Poulsons; (5) general and special damages in the amount of $341,000; (6) punitive damages in the amount of $1,023,000; (7) eight percent interest on the sum of $341,200 from the date the Poulsons purchased the property; and (8) the costs of the lawsuit.

B.      DEMURRER

Bank of America, MERS, and EMC (collectively "Lenders") demurred to the complaint. In the demurrer, Lenders provided their version of the facts: In 2006, the Poulsons refinanced their $272,000 mortgage, and borrowed nearly $400,000. After failing to make a mortgage payment for more than one year, the property was foreclosed and sold at a trustee's sale; however, the Poulsons continued living in the home without making payments. The Poulsons filed a lawsuit in federal court, attempting to rescind their mortgage documents. The complaint was dismissed, and the Poulsons filed an amended complaint. The amended complaint was dismissed and the Poulsons were ordered to pursue their state claims in state court, which led to the instant case.

Lenders asserted the Poulsons' first cause of action failed because it was based on "[d]iscredited [l]egal [t]heories" and "include[s] pages and pages of vague, ambiguous and conclusory allegations that appear to have been simply 'cut and pasted' from whatever source [the Poulsons] could find." Lenders identified four legal theories in the first cause of action: (1) MERS does not have the authority to foreclose, (2) defendants cannot foreclose because the mortgage and deed of trust were separated

5

when the mortgage was securitized, (3) only the "'holder in due course'" may foreclose, and (4) the Poulsons' mortgage was illegally securitized.

As to the first theory, Lenders asserted California law provides MERS does have the authority to foreclose upon a property. (*Gomes v. Countrywide Home Loans* (2011) 192 Cal.App.4th 1149, 1157-1158 (*Gomes*).) Therefore, Lenders argued the Poulsons' first theory necessarily failed. In the alternative, Lenders asserted California's non-judicial foreclosure law does not provide for the filing of a lawsuit to determine if MERS has the authority to foreclose. (*Id.* at p. 1155.) Additionally, Lenders asserted since the Poulsons alleged MERS was a beneficiary, the Poulsons could not successfully argue MERS lacked the authority to foreclose or transfer interest in the deed or note. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 271-272.)

As to the second theory, i.e., the separation of the deed and note theory or "show me the note" theory, Lenders argued the Poulsons failed to provide any law supporting the idea that a mortgage could be erased due to separation of the deed and note. Lenders asserted the theory was rejected in *In re Mortgage Electronic Registration Systems* (*MERS*) *Litigation* (D. Ariz. 2010) 744 F.Supp.2d 1018, 1026. The "note splitting" theory was rejected by the Arizona court because the note does not need to be produced in a non-judicial foreclosure. (*Ibid.*)

In regard to the third theory, i.e. the "holder in due course" theory, Lenders asserted California's non-judicial foreclosure scheme does not include a "holder in due course" requirement, and for that reason, the third theory fails. (*Lane v. Vitek Real Estate Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1099.) Alternatively, Lenders argued California's non-judicial foreclosure law did not permit lawsuits to determine if the person initiating the foreclosure is authorized to foreclose (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155), and therefore, the Poulsons' argument must fail because it concerns defendants' authorization to foreclose upon the property.

As to the fourth theory—illegal securitization—Lenders argued the mortgage was properly secured and traded on the secondary market, because California law allows the mortgage to follow the note. (Civ. Code, § 2936.) Alternatively, Lenders asserted that if the securitization was improper, the Poulsons lacked standing to raise the issue because the Poulsons were not parties to the "Pooling and Servicing Agreement"; the agreement related to the securitization of the mortgage. Lenders argued there is no logical or legal basis for the Poulsons being relieved of their mortgage obligations due to the loan being securitized.

In a final argument related to the first cause of action, Lenders argued the cause of action failed because the Poulsons failed to allege they had paid the money owing on their account. Lenders argued the Poulsons' were more than two years past due on their mortgage payments. Therefore, Lenders asserted, the trustee's sale was proper.

In regard to the second cause of action (fraud), Lenders argued the Poulsons failed to plead the cause of action with the requisite specificity. For example, the Poulsons failed to allege the names of the person or people who allegedly made the fraudulent representations. Additionally, the Lenders asserted the fraud cause of action was based upon the discredited legal theories discussed *ante*. For example, Lenders argued the Poulsons' theory that EMC recorded fraudulent notices of default and a trustee's sale were based upon the incorrect "holder in due course" argument. Lenders also faulted the Poulsons for not alleging how they reasonably relied on the supposedly fraudulent recordings.

Lenders asserted the third cause of action, for breach of contract, must fail because the Poulsons were not parties to the Pooling and Servicing Agreement (concerning the securitization of their mortgage), which they asserted was breached. Lenders argued they could not be held to be in breach of contract by people who were not parties to the contract. (*Tri-Continent International Corp. v. Paris Savings & Loan Assn.* (1993) 12 Cal.App.4th 1354, 1359.) Further, Lenders argued the Poulsons failed to assert they were third party beneficiaries of the contract, and even if they were third party beneficiaries, their cause of action was time-barred. The Poulsons asserted defendants had to move the property into the Bear Stearns Trust by March 2007; Lenders argued, if that failure to move the property into the trust was a breach, then the breach occurred over four years before the complaint and therefore was not actionable.

8

C.    OPPOSITION TO LENDERS' DEMURRER

The Poulsons opposed Lenders' demurrer.  In the opposition, the Poulsons argued they offered to pay the amount owed on their mortgage; therefore, the foreclosure was wrongful.  The Poulsons further asserted they had a right to sue to determine if defendants were authorized to foreclose on the property, because if defendants were not authorized then the Poulsons could be placed in "financial double jeopardy," if the proper party later tried to foreclose on the property.  For example, Bank of America received the home at the trustee's sale, but one year after the sale, Chase Bank sent "two letters regarding change[s] in loan numbers, rate, principal pay-off and monthly payment amounts."[3]  The Poulsons argued that if the court were to sustain the demurrer, then the court should grant the Poulsons leave to amend because "leave to amend the complaint is routinely granted."

D.    LENDERS' REPLY TO THE OPPOSITION

Lenders replied to the Poulsons' opposition.  Lenders again argued the Poulsons had missed multiple mortgage payments, and therefore the foreclosure was proper.  Lenders also repeated the argument that the Poulsons' allegations were based upon incorrect legal theories.  Additionally, Lenders asserted the Poulsons failed to explain how they could amend their complaint to cure its alleged deficiencies.

---

[3]  The communication from Chase Bank will be discussed *post*.  It is unclear if it relates to (1) a transfer of the Poulsons' first mortgage, (2) a transfer of the Poulsons' second mortgage, or (3) a loan modification.

E.    THE POULSONS' RESPONSE

The Poulsons filed a response to the Lenders' reply.  First, the Poulsons asserted Lenders were improperly ignoring the fact that the Poulsons received a letter from Chase Bank "giving [them] both the projected mortgage rate and principal pay-off, along with loan account number change and date by which payments would be due." Second, the Poulsons asserted Chase Bank accepted a payment of $566,266, which was more than the amount owed for the property at the time of the trustee's sale.  The Poulsons argued the foreclosure was improper, since Chase Bank accepted payment.

Third, the Poulsons asserted they were not relying on incorrect legal theories because it was factual that (a) defendants used "'robo-signed'" documents, and (b) they broke the chain of title.  Fourth, the Poulsons argued Bank of America was not a bona fide purchaser at the trustee's sale because no one was present representing Bank of America at the sale.  Fifth, the Poulsons requested leave to amend their complaint, if the demurrer were to be sustained, but did not explain how they would amend the complaint.

F.    HEARING

On March 26, 2012, the trial court held a hearing on Lenders' demurrer.  Judge Daniel A. Ottolia presided over the hearing.  NDeX was also present at the hearing and explained it had joined in the demurrer.  The trial court said its tentative decision was to sustain the demurrer without leave to amend.  The trial court explained the reasons for its tentative decision.  As to the first cause of action, the trial court found the Poulsons failed to allege they had made their mortgage payments.  The trial court cited *Gomes* to

10

explain why MERS had the authority to foreclose upon the property. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) As to the separation of the deed and note, the trial court explained that theory has been rejected in California. The trial court said there is no requirement for a lender to "be the holder in due course," because foreclosure can be initiated by a trustee, beneficiary, or an authorized agent. The trial court also concluded the securitization theory had been rejected in California.

As to the second cause of action (fraud), the trial court found the complaint failed to allege who made the allegedly fraudulent statements, the person's authority, to whom the person spoke, and what was said or written. In regard to the third cause of action (breach), the trial court found the Poulsons lacked standing to sue for breach of the Pooling and Service Agreement because the Poulsons were not parties to the contract or third party beneficiaries.

Ronald Poulson (Ronald)[4] asserted he could not provide names for the fraud cause of action because "robo-signers" were behind the fraud. Ronald further asserted he submitted a "robo-signed" letter bearing the name of "Al Paceo," so that evidence provided a name. Ronald then explained Chase Bank had provided him a new loan number for his mortgage. The trial court explained, "Those are all pre-foreclosure remedies. Your house has already been foreclosed on, Mr. Poulson."

---

[4] We use Mr. Poulson's first name for clarity and ease of reference, since his wife's last name is also Poulson. No disrespect is intended.

Ronald asked the court "what happens" with the $566,225 that was sent to Chase Bank for the property. The trial court asked Ronald to clarify what documents were involved with the money given to Chase Bank. Ronald said the document to which he was referring read, "'U.S. Bank paid on the order of Chase, $566,225. EFT only for discharge.'" Ronald explained that an accompanying letter reflected Chase was "recontracting" with the Poulsons. Ronald said the communications involving Chase occurred in January 2012.

Lenders said they were unclear if money had actually been transferred to Chase or if it was an offer to give money to Chase. However, Lenders asserted an offer to make a payment to Chase in January 2012 would have been a "post-foreclosure matter," since the property was foreclosed in September 2010. Ronald responded, "But there is a letter there. They've taken it. I'm protected by California law, by California code. They have accepted it. It's a done deal. They own it. So where is my remedy?" Ronald continued, "I also have superior title on the property. I have a land patent on the property."

The court took the matter under submission. On April 18, 2012, Judge Ottolia issued his ruling. The court sustained defendants' demurrer without leave to amend. The ruling does not reflect any of the court's reasoning. The court ordered defendants to prepare an order and judgment of dismissal.

Defendants prepared a proposed judgment of dismissal. The name under the signature line in the proposed judgment was "Hon. Daniel A. Ottolia"; however, when the judgment was signed, "Hon. Daniel A. Ottolia" was crossed out by hand, a stamp

12

reading "Paulette Durand Barkley" was placed underneath the crossed-out "Hon. Daniel A. Ottolia" and Commissioner Barkley signed the judgment. The judgment reflected the Poulsons' case was dismissed in its entirety.

## DISCUSSION

### A.     SUSTAINING THE DEMURRER

#### 1.     *CONTENTION*

The Poulsons contend the trial court erred by sustaining the demurrer because (1) MERS does not have standing to bring a lawsuit and therefore cannot foreclose on property; (2) defendants do not possess the original note; (3) it was apparent the court had decided the issue prior to the hearing; (4) the Poulsons offered to pay the amount due on the mortgage; and (5) defendants foreclosed on the property while the Poulsons were going through the loan modification process.[5]

#### 2.     *LAW*

"'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We

---

[5] The Poulsons are self-represented litigants. Their appellants' opening brief lacks point headings, and their legal arguments are difficult to decipher. We have inferred the foregoing two points are the main issues on appeal, although this is somewhat of a guess on our part due to the lack of clear legal arguments in the Poulsons' briefs.

13

deem to be true all material facts properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] If no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer. [Citation.]" (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43.)

### 3. *MERS STANDING*

The Poulsons assert MERS does not have standing to bring a lawsuit in court, and therefore, does not have authority to initiate a non-judicial foreclosure. The Poulsons' reasoning fails because they are asking this court to apply judicial foreclosure law, when California law provides for non-judicial foreclosure.

California has a comprehensive non-judicial foreclosure scheme, which is set forth in Civil Code sections 2924 et seq. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1154.) The Poulsons assert since MERS lacks standing to bring a lawsuit, as set forth in *Mortgage Electronic Registration Systems, Inc. v. Saunders* (Me. 2010) 2 A.3d 289, 297 (*Saunders*), it cannot initiate a foreclosure proceeding. This reasoning is flawed because *Saunders* is a Maine case and Maine is a judicial foreclosure state. (*Id.* at pp. 296-297.)

The relevant portion of *Saunders* provides, "In other jurisdictions utilizing *non-judicial* foreclosure, MERS has been able to institute foreclosure proceedings based on its designation in the mortgage as the 'mortgagee of record.' [Citations.] These cases are inapposite because non-judicial foreclosures do not invoke the jurisdiction of the courts. Non-judicial foreclosures proceed wholly outside of the judiciary, typically

14

utilizing local law enforcement to evict a mortgagor and gain possession of the mortgaged property. [¶] Here, MERS sought to foreclose on the Saunderses' mortgage by filing a lawsuit, and like any other plaintiff filing suit within our courts, must prove its standing to sue. [Citation.]" (*Saunders*, *supra*, 2 A.3d at p. 296.)

As set forth *ante*, California is a non-judicial foreclosure state. Therefore, the fact that MERS may not have standing to bring a lawsuit in court is not relevant to whether MERS has the authority to initiate foreclosure proceedings in California. It is only relevant in judicial foreclosure proceedings. Accordingly, we conclude the trial court did not err.

### 4. *ORIGINAL NOTE*

The Poulsons contend the trial court erred by sustaining the demurrer because defendants do not possess the original note, i.e., defendants are not holders of the note. California law "does not mandate physical possession of the underlying promissory note in order" for a person or entity to initiate a foreclosure. (*Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, 440.) As explained in *Debrunner*, there is "nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note." (*Ibid*.) "Notably [Civil Code] section 2924, subdivision (a)(1), permits a notice of default to be filed by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents.' The provision does not mandate physical possession of the underlying promissory note in order for this initiation of foreclosure to be valid." (*Ibid.*) Since the law does not require possession

15

of the underlying promissory note, we conclude the trial court did not err by sustaining the demurrer.

### 5. *RULING*

The Poulsons assert the trial court had already determined its ruling prior to the hearing due to (1) the court giving a tentative ruling in favor of defendants, and (2) the court only being attentive to defendants' arguments, within this assertion the Poulsons contend the court ignored their evidence.

Tentative rulings only "'indicate the way the judge is prepared to decide the matter based on the information before him or her.'" (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1245.) "Courts are not bound by their tentative rulings. [Citation.]" (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633.)

The trial court gave a tentative ruling at the beginning of the hearing. The court said the ruling was "tentative" and, after giving the tentative ruling, asked Ronald if he wanted to provide argument. Ronald provided argument. The court explained the arguments were not persuasive because they related to pre-foreclosure remedies. Ronald asked the court, "So now what happens to the instrument that was sent to them?" The trial court tried to clarify exactly what instrument Ronald was discussing by speaking with both Ronald and defense counsel. Ronald repeatedly asserted the instrument is "there." The court twice asked Ronald to simply read the name of the document. After Ronald provided the title, "'U.S. Bank paid on the order of Chase, $566,225. EFT only for discharge,'" defense counsel explained why the court should

16

not rely on the document:  (1) it was unclear if money was actually transferred, and (2) if there were a transfer, it occurred after the foreclosure.

Ronald then offered more argument explaining the debt had been discharged. NDeX explained that it joined in the demurrer, and then Ronald offered more argument. Ronald explained that he had "superior title on the property."  The court then took the matter under submission.  The hearing took place on March 26, 2012, and the ruling on the demurrer was dated April 17 and filed April 18.

There is nothing indicating the trial court was bound to its tentative ruling.  It appears the trial court gave a tentative ruling only for the purpose of directing the Poulsons where to focus their arguments.  Since the trial court (a) gave the Poulsons time to argue, and (b) tried, with concerted effort, to understand the Poulsons' "instrument" argument, it does not appear the trial court (1) ignored the Poulsons' evidence, (2) only considered defendants' arguments, and (3) had decided the issue prior to the hearing.  Accordingly, we conclude the trial court did not err.

6.      *DISCHARGED DEBT*

a)      Documents[6]

In December 2006, the Poulsons executed a note for a $304,000 mortgage with an adjustable interest rate.  In 2006, the interest rate on the loan was 7.13 percent.  Also

---

**6** Some of the information provided in this section is taken from documents included in requests for judicial notice, filed at the trial court and included in the record on appeal.  It does not appear the trial court ever ruled on the requests.  We use the documents in the record to provide context for the Poulsons' arguments, because their arguments are vague and disjointed.

in December 2006, the Poulsons executed a note for a second mortgage in the amount of $76,000 with an interest rate of 12.5 percent. The bank involved in both mortgages was Liberty American Mortgage Corp.

A Notice of Default and Election to Sell Under the Deed of Trust was recorded against the property in September 2009. The notice provided that a payment to stop the foreclosure proceedings needed to be sent to EMC Mortgage Corporation, care of NDeX. The principle balance on the loan was $304,000. The notice reflected the Poulsons were approximately $20,000 behind in their payments. A Notice of Trustee's Sale, dated August 13, 2010, reflected the total amount owed, including the unpaid balance and costs of the sale was approximately $348,697.95. The notice reflected the property would be sold on September 7, 2010. A Trustee's Deed Upon Sale was recorded on September 16, 2010, reflecting the property was conveyed to Bank of America.[7]

On December 12, 2011, Chase Bank sent a letter to the Poulsons informing them that the interest rate for their adjustable rate mortgage had changed from 7.35 percent to 7.75 percent and the principal balance on the loan was $296,897.89.

---

[7] It appears from the record that the mortgage was securitized into Bear Stearns Asset Backed Securities I LLC. LaSalle Bank was the trustee for the certificate holders of the Bear Stearns securities. LaSalle Bank was acquired by Bank of America, thus bringing Bank of American into the trustee's sale.

In January 26, 2012, the Poulsons sent Chase Bank (1) a letter, and (2) a check from U.S. Bank.[8] The check was in the amount of $566,225. In the letter, the Poulsons asserted the check was to be used to discharge their debt. However, the Poulsons also wrote that the check was "not to be used for deposit," it was only to "be processed through Electronic Funds Transfer (EFT)."

On March 5, 2012, the Poulsons sent a second letter to Chase Bank. The second letter reflected Chase had failed to respond to the January 2012 letter and check, and therefore, the Poulsons considered their debt with Chase to be discharged.

b)      Analysis

The Poulsons contend the trial court erred by sustaining the demurrer because the Poulsons offered to pay the amount due on the mortgage.

The general rule is that a "debtor has no postsale right of redemption. [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.) Under this rule, the fact that the Paulsons offered money to Chase Bank *after* the foreclosure would not in any way prove a wrongful foreclosure cause of action. Since the foreclosure was completed, the Poulsons could not redeem themselves by offering payment. Accordingly, under this rule, the trial court did not err by sustaining the demurrer, because the Poulsons' offer occurred *after* the foreclosure, when there is no right of redemption.

---

[8] The letter is dated January 26, 2011. We infer "2011" should read "2012" since (1) the notary's affidavit reflects the letter was sent on January 26, 2012, and (2) the check is dated January 26, 2012.

There is a harmless error rule that may cause an offer of payment to appear relevant, but it does not apply in this case. The rule is as follows: If a borrower proves irregularities in the trustee's sale, the irregularities will be deemed harmless unless the borrower can prove s/he offered to redeem the property. (*Lona v. Citibank* (2011) 202 Cal.App.4th 89, 112.) In this case, the Poulsons have failed to properly allege facts that would show an irregularity in the sale. Therefore, a court would not reach the issue of whether payment was offered. As a result, we conclude the trial court did not err by sustaining the demurrer.

### 7. *LOAN MODIFICATION*

The Poulsons contend the trial court erred by sustaining the demurrer because defendants foreclosed on the property while the Poulsons were going through the loan modification process.

Prior to a property being sold at a trustee's sale, a borrower can cure his/her default and have the loan reinstated. (Civil Code, § 2924c, subd. (a)(1)&(2).) If, after the default, but before the trustee's sale, the bank and the borrower reach an enforceable agreement to modify the terms of the loan and bring the loan current, and payments are made per that modification agreement, then the borrower would have a cause of action for wrongful foreclosure if the trustee's sale were executed. (*Barroso v. Ocwen Loan Servicing, LLC* (2012) 208 Cal.App.4th 1001, 1017.)

20

In the instant case, it is unclear if the Poulsons had a loan modification prior to the trustee's sale. The allegations in the complaint do not shed light on this issue. Information in the record that could be construed as relating to a modification, e.g., the letter from Chase Bank, reflects a date that is post-foreclosure. Additionally, it is unclear how the check from the Poulsons to Chase Bank would reflect a loan modification had been granted, which somehow involved defendants and brought current the loan with defendants. In sum, it does not appear from the record that the Poulsons had a loan modification prior to the trustee's sale.

We recognize that our discussion has delved beyond the complaint into various documents. The Poulsons are self-represented litigants and their complaint is somewhat difficult to construe. As a result, we are using the evidence to help provide context in understanding the allegations made in their complaint. We conclude (1) the complaint does not provide specific information about the modification, and (2) the evidence does not reflect how the more vague allegations in the complaint could be construed as relating to a cause of action involving a loan modification. In sum, the Poulsons failed to allege a cause of action reflecting (1) the trustee's sale took place when (2) there was an enforceable loan modification in place prior to the sale. Accordingly, the trial court did not err by sustaining the demurrer.

The Poulsons do not appear to be arguing the leave to amend issue. However, to the extent the Poulsons intended to raise the issue, we note the documents provided in the record do not reflect leave to amend should have been granted. "The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment.

21

[Citations.] A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment. [Citations.]" (*Trader Sports, Inc. v. City of San Leandro*, *supra*, 93 Cal.App.4th at pp. 43-44.)

As set forth *ante*, the record includes a letter from Chase Bank, dated after the foreclosure, reflecting an interest rate adjustment was being made to the Poulsons' loan. There is nothing indicating that (1) Bank of America agreed to a loan modification, (2) a payment was made to Bank of America or EMC, or (3) the Poulsons' default had somehow been cured prior to the trustee's sale. Accordingly, we conclude the trial court acted within its discretion by denying leave to amend.

### 8. *CONCLUSION*

We conclude the trial court did not err.

### B. COMMISSIONER

The Poulsons contend the judgment of dismissal is erroneous because they did not stipulate to a commissioner presiding over their case.

A commissioner has the power to (1) hear and determine ex parte motions for orders and alternative writs and writs of habeas corpus; (2) "[t]ake proof and make and report findings thereon"; (3) "[t]ake and approve any bonds and undertakings," and determine objections to the bonds and undertakings; (4) "[a]ct as a temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties"; (5) in family law cases, hear and report findings and conclusions to the court for approval, rejection, or change; (6) hear paternity actions and child and spousal

support actions; and (7) hear, report on, and determine all uncontested actions. (Code Civ. Proc., § 259.)

In Riverside County, all commissioners are appointed as temporary judges. (Super. Ct. Riverside County, Local Rules, rule 1060.) However, the appointment to act as temporary judge is not sufficient to preside over a matter, a commissioner must also obtain a stipulation from the parties to preside over a specific proceeding. (*In re Courtney H.* (1995) 38 Cal.App.4th 1221, 1224; *Foodas v. Superior Court* (2005) 130 Cal.App.4th 649, 654.)[9]

In the instant case, the record does not include a stipulation for Commissioner Barkley to issue a judgment. The Poulsons explicitly refused to stipulate to Commissioner Barkely presiding over the demurrer hearing, so a stipulation cannot be inferred. Issuing a judgment is not on the list of various tasks commissioners may perform without a stipulation. (Code. Civ. Proc., § 259.) Since it appears Commissioner Barkley was not authorized to sign the judgment, we reverse the dismissal. We will direct the trial courdt to have a judge issue the judgment. (See *Perez v. Perez* (1952) 111 Cal.App.2d 827, 830 [where no findings are required, any

---

[9] In at least one county, the local court rules provided stipulation is the default position, and a party must object if he does not want a commissioner presiding over his case. (See *Walker v. San Francisco Housing Authority* (2002) 100 Cal.App.4th 685, 691.) However, the legality of requiring an objection rather than a stipulation has been questioned. (*Foodas v. Superior Court*, *supra*, 130 Cal.App.4th at p. 655.) Riverside County does not appear to have a "commissioner objection" rule for its civil matters, so a stipulation must be entered. (Super. Ct. Riverside County, Local Rules, rules 3110-3199, 3316-3402.)

"judge of the court [may] perform the more or less perfunctory act of entering the formal order"].)[10]

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to have a judge issue the judgment. The underlying ruling, concerning sustaining the demurrer without leave to amend, was proper; this reversal is limited to the dismissal of the action. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

McKINSTER _____
Acting P. J.

CODRINGTON _____
J.

---

[10] Since we have addressed the merits of the Poulsons' contentions, we decline to address NDeX's alternative argument that this Court should order the Poulsons to amend their brief to cite legal authorities and the appellate record.