Filed 3/23/26  San Ramon Valley Unified School Dist. v. J.H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAN RAMON VALLEY UNIFIED SCHOOL DISTRICT, <br><br> Plaintiff and Respondent., <br><br> v. <br><br> J.H., <br><br> Defendant and Appellant. | A174036 <br><br> (Contra Costa County Super. Ct. No. N23-0983) |

Defendant J.H. appeals from the trial court's denial of her motion to terminate a workplace violence restraining order (WVRO) obtained against her by plaintiff and respondent San Ramon Valley Unified School District (School District).  We previously affirmed the WVRO in *San Ramon Valley Unified School Dist. v. J.H.* (Sept. 20, 2024, A169135) [nonpub. opn.] (*San Ramon I*).  In this appeal, J.H. contends that her motion to terminate started a new proceeding that the court commissioner was not authorized to hear without her consent.  J.H. further contends that the court abused its discretion by failing to consider or weigh relevant evidence before denying the motion.

As to J.H.'s first argument, we find that the court commissioner was authorized to hear the matter because the motion to terminate was a direct progeny of the original WVRO proceeding and was therefore not a new

1

proceeding. As to J.H.'s second argument, we agree that the trial court abused its discretion by failing, for all practical purposes, to consider or weigh the new declaration of J.H.'s therapist and therefore reverse.

## I. BACKGROUND

### A. WVRO and Appeal

J.H., who suffers from bipolar disorder, graduated from a high school in the School District in 2016. She lived near the school but often traveled to Massachusetts where she had attended college.

In May 2023, J.H.'s sister (sister) told the police about several alarming tweets that J.H. had recently posted, including: (1) "I'm the next school shooter. Get ready. I'm going on Criminal Minds: Evolution;" (2) "I'll kill you all;" and (3) "I'm a terrorist. The government has officially classified me as a terrorist."[1] Sister was concerned about J.H.'s mental health and informed the police that J.H. was hospitalized in Massachusetts on an involuntary psychiatric hold but could be released "any day now." Sister further told the police that during her conversation with J.H. the day before, J.H. stated that she recently visited the high school to assess how to commit a mass shooting there.

On June 1, 2023, the School District filed a petition for a WVRO and obtained a temporary restraining order against J.H. Sister subsequently clarified to the police that J.H. walking on the high school's campus was "not odd behavior by itself" because she lived within walking distance and had "gone to that track many times over the years."

At the WVRO hearing, J.H. testified that she had been hospitalized a number of times after she moved back to California in January 2023. When

---

[1] J.H. also posted several other tweets between 2021 and 2023 regarding her negative experiences in high school.

2

she posted, "I'm the next school shooter," she explained that she was experiencing a manic episode after she had returned to Massachusetts and began drinking heavily. She continued that she was "not a violent person" and that she "would never cause a mass shooting" or "become a school shooter." Following J.H.'s hospitalization that May, she completed a six-week inpatient psychiatric treatment program at a hospital in Massachusetts and was discharged at the end of June. Her treating doctor reported that her "psychiatric symptoms [were] resolved" and that in his opinion, she "did not pose a danger for committing acts of violence in the future." J.H.'s brother testified that he and his family were frustrated because hospitals kept releasing J.H. before her symptoms, including mania and delusions, had been fully treated.

During closing arguments, J.H. contended that the School District failed to establish a reasonable probability of future harm, given that she was receiving ongoing and regular mental health treatment. The trial court disagreed and granted a three-year WVRO on October 6, 2023. J.H. appealed and we affirmed in *San Ramon I*. In doing so, we concluded that, notwithstanding her most recent treatment, "there was ample evidence that the psychiatric symptoms that led to J.H.'s threatening tweets may recur in the future based on J.H.'s troubling pattern of behavior in recent years." (*San Ramon I*, *supra*, A169135.) Specifically, "J.H. would be hospitalized for acute psychiatric symptoms . . . and would relapse soon after her release, necessitating another round of hospitalization and treatment." (*Ibid*.) Based on this pattern, we held that substantial evidence supported the court's finding "that J.H. continued to pose a credible threat of violence to the high school." (*Ibid*.)

3

B. <u>Motion to Terminate</u>

On March 21, 2025, J.H. moved to terminate the WVRO on the grounds that there was no longer a reasonable probability of future threats or violence by her. The motion attached the declaration of Christian Wulff, a licensed clinical social worker at Boston Medical Center. The declaration, which was executed on January 17, 2025, stated that J.H. was admitted to the Center's Wellness and Recovery After Psychosis (WRAP) program in July 2023, soon after she was discharged from the hospital. Since she began the program, J.H. met with Wulff weekly for individual therapy. She also "started ongoing medication management meetings with a prescribing nurse practitioner" in August 2023.

Wulff's declaration continued that J.H. "has been consistent with her monthly medication appointments" and was "currently prescribed a mood stabilizing agent . . . and an antidepressant," as well as an injection "every four weeks for psychosis." Wulff further noted that J.H. "has not required any hospitalization" since June 2023 and that, based on her "ongoing engagement with her specialized treatment team, it is reasonable to expect [J.H.] to continue to improve."

The motion to terminate was assigned to the same court commissioner who issued the WVRO. J.H. objected and asserted that she would not stipulate to the commissioner's authority. Although J.H. did not object to the commissioner at the time of the original WVRO hearing, she argued that her waiver did not extend to "this new and distinct proceeding." J.H. also filed a peremptory challenge under Code of Civil Procedure section 170.6.[2]

---

[2] All further statutory references are to the Code of Civil Procedure.

At the hearing on the motion, the trial court deemed the peremptory challenge untimely and overruled J.H.'s objection.[3] J.H.'s counsel then proceeded to argue the merits of the motion and asked the court whether it had read the declaration of J.H.'s therapist. The court asked whether he was referring to the declaration presented at the original WVRO trial, and counsel responded, "[n]o, that is not what I am talking about at all." Counsel explained that he was referring to the declaration from Wulff, J.H.'s current therapist, and the court asked counsel whether he had a copy of it. Counsel expressed concern that the court had not reviewed the evidence, and the court responded that it had "read a lot of things in this case" and did "recall something about a medical expert rendering [an] opinion about [J.H.]" Counsel then provided the court with a copy of the declaration, and the court confirmed it had read the document.

Based on Wulff's declaration, J.H.'s counsel emphasized that during the two years since the issuance of the WVRO, J.H. had not relapsed or required hospitalization. Counsel further emphasized that J.H. was taking all of her prescribed medications and was still participating in the WRAP program. Counsel noted that J.H. "is currently in treatment" and "is going to be in treatment for the rest of her life" due to the nature of her mental disorder. At the conclusion of the hearing, the trial court commented that Wulff's declaration did "not state that [he] is someone that treats [J.H.] regularly" and was only "based on [his] involvement with [J.H.]." The court then denied the motion. J.H.'s counsel asked the court whether it would provide a reason, and the court replied, "No. Based on the evidence." J.H. timely appealed.

---

[3] On appeal, J.H. does not challenge the denial of her peremptory challenge.

## II.  DISCUSSION

### A.  Court Commissioner's Authority

J.H. argues that the court commissioner did not have authority to hear the motion to terminate because J.H. did not stipulate to the commissioner's appointment in this "new proceeding" " 'heard on a separate record.' "  We disagree because the motion was a continuation of the original WVRO proceeding.  The commissioner could therefore hear the motion based on J.H.'s original consent (or lack of objection) to her authority to do so.

"On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause."  (Cal. Const., art. VI, § 21.)  "The power of a temporary judge to determine any given subsequent proceeding hinges on whether that proceeding is ancillary to, or a direct progeny of, the stipulated cause."  (*Walker v. San Francisco Housing Authority* (2002) 100 Cal.App.4th 685, 692 (*Walker*).)  "Ancillary proceedings are heard and determined on a separate record independent of the ruling in the stipulated cause."  (*Ibid.*)  By contrast, "proceedings which question the finality of the temporary judge's ruling or are a part of the stipulated cause are its direct progeny."  (*Ibid.*)

Proceedings that are considered the direct progenies of "stipulated cause" include motions for a new trial and motions for reconsideration.  (*Walker, supra,* 100 Cal.App.4th at p. 692.)  Although a motion to reconsider "may raise new or different facts . . ., the record of the underlying proceeding is necessarily a part of the motion" and there is "no 'separate judgment independent of the final judgment in the underlying proceeding.' " (*McCartney v. Superior Court* (1990) 223 Cal.App.3d 1334, 1339 (*McCartney*).)  Thus, the motion "can be construed only as a direct attack

6

upon the judgment entered on the stipulated cause." (*Ibid*.)

That is the case here. Although J.H.'s motion to terminate relied on new evidence, it is still the direct progeny of the stipulated cause, the original WVRO proceeding. This is because a trial court addressing a motion to terminate a restraining order "must consider the circumstances that produced that *original finding* of harassment in order to understand why the harassment occurred and use that understanding to evaluate the conditions existing at the time of the modification [or termination] hearing." (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 529 (*Yost*), italics added.) Thus, the court in this case still had to review the record of J.H.'s original WVRO proceeding, including the circumstances surrounding her original threats, in order to determine whether a reasonable probability of future harm still existed at the time of the motion. (*Id*. at pp. 528–529.) Moreover, there is no separate judgment from the judgment in the original WVRO proceeding. (*McCartney*, *supra*, 223 Cal.App.3d at p. 1339.) If the motion is denied, then the WVRO remains in effect. If the motion is granted, then that WVRO is no longer in effect.

Our conclusion is bolstered by J.H.'s own arguments below. At the hearing on the motion, J.H.'s counsel conceded that the trial court had "to understand what the evidence was at the original hearing in order to put that in context of what the evidence is two-plus years later" in determining whether there is still a likelihood of future harm. Counsel also made clear that J.H. was only asking the court to "lift" the WVRO "so that she is free of it going forward." Although we agree that J.H.'s motion to terminate did not attack the findings of the WVRO, we nevertheless find that the proceeding on the motion was "part of the stipulated cause." (*Walker, supra,* 100 Cal.App.4th at p. 692.) As a result, the commissioner could hear that motion

7

without a new stipulation from J.H.

B. <u>Denial of Motion to Terminate</u>

Turning to the merits, J.H. argues that the trial court abused its discretion in denying her motion to terminate because it failed to consider or weigh new evidence regarding J.H.'s treatment and condition. We agree. Accordingly, we reverse and remand for a new hearing so the court can properly consider that evidence.

1. *Law and Standard of Review*

A trial court may terminate a WVRO at any time. (§ 527.8, subd. (l)(1).) The purpose underlying the issuance of the WVRO—to prevent future harm that is reasonably likely to occur—also guides the court's decision whether to terminate that WVRO. (*Yost, supra*, 51 Cal.App.5th at p. 528.) When the court, "after considering the relevant evidence presented, determines there is no reasonable probability a particular act of harassment [or threat] will be committed in the future, the court has the discretion to" terminate "the restraining order addressing that particular act." (*Ibid*.)

In making this determination, the trial court evaluates " ' "the nature of the unlawful [threat] . . . in the light of the relevant surrounding circumstances of its commission and [considers] whether precipitating circumstances continue to exist so as to establish the likelihood of future harm." ' " (*Yost, supra*, 51 Cal.App.5th at p. 528.) "[T]he restrained party, as the party requesting the modification [or termination], has the burden of proving by a preponderance of the evidence that a reasonable probability does not exist." (*Ibid*.)

We review the trial court's order denying a motion to terminate for abuse of discretion and any express and implied factual findings in support of that order for substantial evidence. (*Loeffler v. Medina* (2009) 174

Cal.App.4th 1495, 1505.) The court's failure to "consider" or "weigh relevant evidence can be deemed an abuse of discretion." (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 514–515 (*Ashby*).)

2. *Analysis*

In support of her motion, J.H. submitted an unrebutted declaration from Wulff, a licensed clinical social worker who has treated J.H. regularly since July 2023. The declaration detailed J.H.'s "dedicated participation in her treatment in [the] WRAP" program and confirmed that she "has not required any hospitalization since her release from" a hospital in June 2023. It continued that J.H. started "ongoing medication management meetings" in August 2023 and consistently attended her monthly appointments, during which she received regular injections to treat her psychosis. Wulff's declaration was plainly relevant to the only issue presented by J.H.'s motion: whether there was still a reasonable probability of future harm. Indeed, the School District does not appear to dispute this. The trial court, however, discounted the declaration for reasons that are belied by the record. And in doing so, the court abused its discretion.

After a colloquy between the trial court and J.H.'s counsel over what the court had reviewed, J.H.'s counsel commented, "I gather . . . you have not read [Wulff's declaration]." The court then asked counsel if he had a copy of the declaration. Counsel remarked, in a manner that appeared somewhat condescending, "[n]ormally when I come into court with a really critical motion, I expect the judge to have read my motion and the supporting evidence, which you haven't done." The court replied that it had "read a lot of things in this case" and that it did "recall something about a medical expert rendering [an] opinion about [J.H.]." The court continued, "[i]f you don't want to [share a copy], I will look it up again." At this point, J.H.'s counsel

9

provided the court with a copy of the declaration and the court promptly stated, "I have read it."[4]

At the conclusion of the hearing, J.H.'s counsel emphasized that Wulff "regularly and consistently" treated J.H. and confirmed that she was in full compliance with the WRAP program. The trial court, however, responded, "I'm just rereading again the declaration by [Wulff], and it does not state that [he] is someone that treats [J.H.] regularly." The court then denied the motion "[b]ased on the evidence submitted . . . today."

Based on the trial court's own statements during the hearing, the court either failed to consider Wulff's declaration or improperly weighed it based on an erroneous reading of that declaration. The court arguably stated that it reviewed the declaration before the hearing and did at least attempt to review it during the hearing. But in its only comment on the contents of that declaration, it mistakenly asserted that Wulff had not treated J.H. regularly even though Wulff expressly stated in his declaration that he met with J.H. *weekly* for individual therapy since July 2023. More significantly, the court made this erroneous assertion in *direct response* to J.H.'s arguments based on that declaration. Indeed, this was the court's only comment on the contents of the declaration during the hearing. This indicates that the court discounted Wulff's unrebutted declaration solely based on its misreading of that declaration. And in doing so, the court, for all practical purposes, did not consider or weigh it.

By failing to properly consider or weigh Wulff's declaration because it misread it, the trial court abused its discretion. (See *Mae M. v. Komrosky*

---

[4] J.H.'s counsel questioned this, noting that the declaration was "multiple pages long." Counsel even told the trial court that it "couldn't have read [the declaration] in [the] few seconds that [it] had it." In response, the court repeated that it had read the declaration.

(2025) 111 Cal.App.5th 198, 221 (*Mae M.*) [trial court abused its discretion in denying injunctive relief where its analysis was "premised on [an] incorrect conclusion" and "lacked consideration of Plaintiffs' proffered record evidence"]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 1000 (*Doppes*) [trial court abused its discretion in failing to award $15,300 in attorney fees because it " 'misread the undisputed evidence' "]; see also *Leahy v. Peterson* (2023) 98 Cal.App.5th 239, 254 ["reversal of a restraining order may be warranted where a party affirmatively demonstrates with a court's explicit statements that the court did not consider relevant evidence"]; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 117 [trial court's refusal to consider postfiling evidence of abuse before denying a DVRO constituted an abuse of discretion].)  Although the court may, in its discretion, decline to terminate a WVRO, it still must "consider" and "weigh" *all* "relevant evidence." (*Ashby, supra,* 68 Cal.App.5th at pp. 514–515.)  By failing to properly consider or weigh Wulff's declaration, as evidenced by its " 'misread[ing]' " of that declaration (*Doppes*, at p. 1000) as well as its "incomplete summary of" it at the hearing (*Mae M.*, at p. 222), the court abused its discretion.

This error was prejudicial because there was a reasonable probability that J.H. would have obtained a more favorable result if the trial court had not misread Wulff's declaration.  (*In re Marriage of F.M. & M.M., supra,* 65 Cal.App.5th at p. 118.)  The sole issue presented at the hearing was whether there was a probability of future threats or violence by J.H. due to her mental illness.  Wulff's unrebutted declaration provided evidence that J.H. had been successfully receiving treatment for almost two years after the issuance of the WVRO and had suffered no relapses during that time period.  Because the basis for the issuance of the original WVRO was the risk that J.H. would

11

relapse after receiving treatment, we cannot conclude that the court's failure to properly consider or weigh Wulff's declaration was harmless error.

### III.  <u>DISPOSITION</u>

We reverse the trial court's order and remand the matter for a further hearing on J.H.'s motion to terminate the WVRO consistent with the views expressed in this opinion.[5]


CHOU, J.


We concur.


SIMONS, Acting P. J.
BURNS, J.


A174036/ *San Ramon v. J.H.*

---

[5] We express no opinion on the outcome or merits of the motion to terminate the WVRO on remand.